Alan PADILLA, Plaintiff,

v.

**UNITED AIR LINES, Defendant.**

Civ. A. No. 88–A–400.

United States District Court,
D. Colorado.

July 5, 1989.

**486**

John Mosby, Elisa J. Moran, Denver, Colo., for plaintiff.

Steven J. Merker, Cecilia N. Serna, Davis, Graham & Stubbs, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER ON POST TRIAL MOTIONS

ARRAJ, District Judge.

This disparate treatment action, brought by plaintiff Alan Padilla ("Padilla") under 42 U.S.C. § 1981, was tried to the court on May 22 and 23, 1989. The parties filed post-trial briefs and oral argument was heard on June 5. The court ordered judgment in plaintiff's favor on June 14, finding that defendant United Air Lines, Inc. ("United") had discriminated against plaintiff because of his race and that plaintiff was entitled to $4,117.68 back pay. This amount constituted lost earnings for a period beginning April 19, 1985, the day after plaintiff was terminated, and ending on June 16, 1985, the end of an eighty-nine day temporary employment period.

Each party has filed a post-trial motion. Plaintiff has moved to alter or amend the judgment pursuant to F.R.C.P. 59(e) or in the alternative grant relief from judgment pursuant to F.R.C.P. 60(b)(6). Defendant has moved to amend the judgment pursuant to F.R.C.P. 52 or to grant a new trial pursuant to F.R.C.P. 59.

Counsel for both parties have litigated this action vigorously. The attorneys have ably represented their clients throughout these proceedings. I find that further briefing and oral argument on the post-trial motions would not be helpful.

### I) Plaintiff's Motion

Plaintiff contends that the court erred as a matter of law by placing the burden on the plaintiff to prove that he would have been employed beyond the eighty-nine day period. It is plaintiff's po-

sition that the defendant had the burden to prove by a preponderance of the evidence that Padilla would not have been hired as a permanent full-time employee but for discrimination by the defendant. Plaintiff cites *Day v. Mathews,* 530 F.2d 1083 (D.C. Cir.1976), in support of his position. In *Day,* a black employee of the Department of Health, Education and Welfare brought a Title VII suit charging that he was denied a promotion because of racial discrimination. The Court of Appeals held that plaintiff, upon establishing a *prima facie* showing of discrimination, was entitled to back pay and retroactive promotion if defendant was unable to prove by clear and convincing evidence that, absent the admitted discrimination, the employee would not have been promoted. The court explained why the defendant should bear this burden: [1]

> The reason for this is straight forward. 'Unquestionably, it is now impossible for an individual discriminatee to recreate the past with exactitude.' *Johnson v. Goodyear Tire & Rubber Co., supra,* 491 F.2d [1364] at 1379 [5th Cir.1974]. Such a showing is impossible precisely because of the employer's unlawful action; it is only equitable that any resulting uncertainty be resolved against the party whose action gave rise to the problem. Thus, once discrimination is shown, relief should not be narrowly denied.

*Id.* at 1086.

Plaintiff argues that defendant failed to produce any evidence that Padilla would not have obtained permanent status had the discrimination by defendant not occurred. On the other hand, plaintiff contends that, although it was not his burden, that he established at trial that more than 50% of similarly situated employees became permanent employees, citing Plaintiff's Trial Exhibit 8. Plaintiff's Exhibit 8 contains the names of 52 employees purportedly working as full-time permanent ramp-servicemen employees who were originally hired as temporary ramp-servicemen between December 2, 1983 and April 18, 1985. Comparison to Plaintiff's Exhibit 7, which lists 163 individuals who were hired as temporary ramp-servicemen in the same time period, reveals that, in fact, less than one-third of the individuals originally hired on temporary status are currently working as full-time permanent ramp-servicemen.

In any event, the *Day* case is distinguishable from the present case. United employees, including Charlie Bartish, Matthew Johnson, and the plaintiff himself, testified at trial that the decision to hire a former temporary employee as a permanent employee was entirely up to United. These witnesses said that United made no representations that a permanent position would be awarded to those who adequately performed as temporary employees. This is different from the plaintiff's situation in *Day* where the plaintiff had applied for a higher position which was later filled by a white applicant. There the plaintiff had a legitimate expectation that the most qualified person would be chosen to fill the position for which he had applied. In contrast, the record does not include evidence that Padilla ever sought a permanent position. Therefore, his assertion that he has been prevented from becoming a permanent employee is unconvincing. When Padilla was terminated, he did not have a reasonable expectation that he would remain employed by United beyond the eighty-nine day temporary employment period. Defendant should not be forced to prove that Padilla would not have been hired as a permanent employee, but for the discrimination, because there is no credible evidence that he would have ever applied for such a position.[2]

Plaintiff also complains that he was not allowed to compare himself to similarly sit-

---

1. In *Day,* the court assigned a burden of persuasion of "clear and convincing" evidence to the defendant. *Id.* at 1085. Plaintiff concedes that the burden was reduced to a "preponderance of the evidence" in the recent Supreme Court case of *Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

2. Padilla's own self-serving testimony that he intended to make a permanent career with United does not persuade me to the contrary.

uated employees who were later hired into permanent full-time positions. It is clear from Exhibits 7 and 8 that plaintiff discovered the names of the permanent employees who started at United as temporaries. As previously mentioned, comparison of Exhibits 7 and 8 shows that less than one-third of the employees originally hired as temporaries now work in a permanent position. This fact does not establish that plaintiff would have obtained permanent status.

Apparently, plaintiff feels that he was prejudiced because he was not allowed to discover how other similarly situated employees were treated in terms of discipline for mishaps or near accidents. Evidence of this type of disparate treatment goes to the issue of discriminatory treatment of employees, not to the likelihood that plaintiff would have acquired permanent status. Because the court decided that plaintiff was treated disparately, it is evident that plaintiff has not been prejudiced in this regard.

Plaintiff presents the court with an additional issue in his most recent Motion. Padilla has not previously asked the court to clear his record and remove the "Ineligible For Rehire" notation from his employee file at United. However, in the present Motion he seeks this equitable relief. I exercise my discretion to grant plaintiff's request.

■ Unquestionably, "[t]he trial court has wide discretion in fashioning remedies to make victims of discrimination whole." *Sears v. Bennett*, 645 F.2d 1365, 1378 (10th Cir.1981), *cert. denied* 456 U.S. 964, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982); *E.E.O.C. v. General Lines, Inc.*, 865 F.2d 1555, 1560 (10th Cir.1989) (quoting *Sears v. Bennett*). This discretion must be exercised to remove the vestiges of past discrimination. *See United States v. Ironworkers Local 86*, 443 F.2d 544, 553 (9th Cir.), *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). In fact, "[w]here racial discrimination is concerned, 'the [district] court has not merely the power but the duty to render a decree which will so far as possi-

ble eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (citation omitted). Thus, the court may grant appropriate equitable relief even where it was not sought in the pleadings. *Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129 (10th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983).

■ Recovery was sought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.,[3] in the cases cited in the paragraph above. Title VII provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate...."

42 U.S.C. § 2000e–5(g). The scope of remedies available under § 1981 is at least as broad as that available under Title VII. *Davis v. County of Los Angeles*, 566 F.2d 1334, 1342 (9th Cir.1977) ("Although the decided cases have primarily involved either Title VII or § 1983, and not § 1981, we feel the extensive case law under both sections approving affirmative relief is directly applicable here. We see no reason to limit the relief available under § 1981 merely because in the past § 1981 and Title VII have been read in tandem.") *vacated as moot*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Carrion v. Yeshiva University*, 535 F.2d 722, 729 (2d Cir.1976); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 243 (5th Cir.1974).

■ I have previously determined that Padilla was entitled to relief because he was treated disparately due to his race.

**3.** In *Whatley, supra,* the plaintiff based his claims on Title VII and 42 U.S.C. § 1981.

Memorandum Opinion and Order, June 14, 1989, at 9. United terminated Padilla without conducting an investigation aimed at determining whether Padilla had committed the safety violation for which he was allegedly disciplined. Padilla's supervisor, Gilbert Paquet ("Paquet"), ensured that Padilla would never be rehired by United by marking the "Recommended For Rehire" space on Padilla's Exit Interview Form, "No." Plaintiff's Exhibit 4. Paquet testified that he did this because of the seriousness of Padilla's offense. Thus, as the result of the discriminatory actions taken by United, in addition to losing income that he would have received through the end of the eighty-nine day temporary employment period, plaintiff was prevented from obtaining future employment with United. I have already ordered compensation for the lost income. Memorandum Opinion and Order, June 14, 1989. Now I find it is necessary to remove the negative recommendation from Padilla's record in order to place him in the same position that he would have been in had the discrimination never occurred. By this decision the court is not intimating that defendant is obligated to rehire plaintiff, but it is only intended to give plaintiff his proper relief for the disparate treatment.

## II) Defendant's Motion

Defendant has moved the court to amend the judgment or for a new trial. United asks the court to amend the judgment to hold that plaintiff's claims are governed by the provisions of Title VII and not 42 U.S.C. § 1981 and that plaintiff's racial discrimination claim should therefore be dismissed. Alternatively, defendant requests a new trial to make new findings of fact and conclusions of law that Padilla's claim is not cognizable under § 1981. United argues that the recently decided Supreme Court case, *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), limits the application of 42 U.S.C. § 1981 to cases involving the *formation* of a contract. According to United, § 1981 does not apply to this set of facts because plaintiff has alleged discriminatory behavior in post-formation conduct which does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment. *See id.* at —, 109 S.Ct. at 2373.

*Patterson* is not directly applicable to the present case. First of all, the Court did not say that *termination* of an employee does not involve the formation process. In *Patterson*, the plaintiff, a black woman, sued her former employer, alleging that it had harassed her, failed to promote her, and discharged her because of her race. The Court held that plaintiff's claim for *discriminatory harassment* was not actionable under § 1981, because harassment is a condition of continuing employment. "[T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at —, 109 S.Ct. at 2373. On the other hand, the Court held that discrimination in promotions is actionable under § 1981 where "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* at —, 109 S.Ct. at 2377. The issue of whether plaintiff's claim for discriminatory firing was actionable under § 1981 was not before the Court as the jury had returned a verdict in favor of the defendant on that claim at trial.

In *Patterson*, the Court was faced with the task of interpreting the breadth of § 1981, which provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains penalties, taxes, licenses, and exactions of every kind, and to no other.

The Court noted the narrow wording of the statute, and concluded that "[s]ection 1981

cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Id.* at ——, 109 S.Ct. at 2372.

■ United's argument fails because termination is part of the making of a contract. A person who is terminated because of his race, like one who was denied an employment contract because of his race, is without a job. Termination affects the existence of the contract, not merely the terms of its performance. Thus, discriminatory termination directly affects the right to make a contract contrary to § 1981.[4]

In *Patterson*, the Fourth Circuit agreed with this conclusion. *Patterson v. McLean Credit Union*, 805 F.2d 1143, 1145 (4th Cir.1986). "Claims of racially discriminatory hiring, firing, and promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection." The Eleventh Circuit adopted a similar position in *Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503 (11th Cir.1989). In *Vance*, the trial court granted the employer's motion for judgment not withstanding the verdict (JNOV) and in the alternative for a new trial after the jury awarded the plaintiff compensatory and punitive damages on her claim for racial discrimination under § 1981. Plaintiff alleged, and the jury agreed, that her co-workers had harassed her, creating a discriminatory work environment. The Eleventh Circuit held that the district court had erred by granting defendant's motion for JNOV. Responding to defendant's argument that racial harassment claims are not actionable under § 1981, the Court of Appeals stated:

> We reject the defendant's contention that the district court's order for JNOV must be affirmed because racial harassment claims are not covered by § 1981. Appellee's reliance on *Patterson v. McLean Credit Union*, 805 F.2d 1143 (4th Cir. 1986), *cert. granted*, 484 U.S. 814, 108

S.Ct. 65, 98 L.Ed.2d 29 (1987) is misplaced. In *Patterson*, the court contrasted the language of Title VII, which prohibits discrimination with respect to the 'terms, conditions or privileges of employment' with § 1981's prohibition of discrimination in 'the making and enforcement of contracts.' We need not reach the issue of whether § 1981 covers 'pure' harassment claims, because [the plaintiff] presented evidence that the harassment caused her to stop working at Western Way, thereby impairing her ability to make and enforce her employment contract....

*Id.* at 1509 n. 3.

I hold that Padilla's claim was actionable pursuant to § 1981. Padilla did not simply complain that he was harassed. Padilla's case was based upon the premise that United discriminated against him because of his race when United impaired his ability to make an employment contract by terminating him and by preventing him from obtaining future employment with United. *Patterson, supra,* does not demand a contrary holding.

Accordingly,

IT IS ORDERED that plaintiff's Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e) or in the Alternative Relief From Judgment Pursuant to F.R.C.P. 60(b)(6) is GRANTED to the extent that defendant shall be ordered to expunge from the personnel records of plaintiff any notation that adversely affects his rights for consideration for rehire;

IT IS FURTHER ORDERED that defendant's Motion to Amend Judgment or For a New Trial be, and the same hereby is, DENIED.

---

**4.** Defendant's refusal to reconsider plaintiff for rehire due to discriminatory practices is even more clearly prohibited by § 1981. The "Ineligible for Rehire" status assigned to Padilla prevents him from entering into an employment contract with United in the future.