Richard L. **HALL**, Plaintiff,

v.

**COUNTY OF COOK, STATE OF ILLINOIS**, Defendant.

No. 87 C 6918.

United States District Court,
N.D. Illinois, E.D.

Aug. 14, 1989.

---

Richard L. Hall, (court appointed), Thomas E. Buess, Chicago, Ill., for plaintiff.

Diane Kristen, Iris E. Sholder, State's Attorney of Cook County, Chicago, Ill., Susan C. Salita, for defendant.

MEMORANDUM OPINION
AND ORDER

ROVNER, District Judge.

I. INTRODUCTION

This is a case in which plaintiff Richard L. Hall alleges that defendant Cook County terminated him on the basis of his race in

---

violation of 42 U.S.C. § 1981. In light of the recent Supreme Court decision of *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which limited the applicability of § 1981, defendant has requested that the Court dismiss plaintiff's complaint because it does not fall within the purview of the statute.[1] For the reasons set forth below, the Court grants Cook County's motion and dismisses Hall's complaint.

## II. PROCEDURAL HISTORY

In March, 1985, Hall's employment of ten years at Cook County Hospital (the "Hospital") was terminated. Although defendant asserts that the discharge occurred because plaintiff committed a "major cause infraction" of the Hospital's rules concerning safety procedures, Hall believes this reason to be pretextual and the termination to be a racially motivated act. On August 6, 1987, Hall filed this action pro se against Cook County, alleging in his complaint that the termination violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). On August 26, 1987, Judge Marshall, to whom the case was first assigned, granted Hall's motion for appointment of counsel and appointed Mr. Thomas Buess to represent Hall.

On March 3, 1988, Hall filed an amended complaint, adding a claim under 42 U.S.C. § 1981. On March 22, defendant filed a motion to dismiss the amended complaint on the basis that it was untimely. On May 23, Judge Marshall granted Cook County's motion to dismiss Count I (the Title VII count) but found that the § 1981 claim was not time-barred.

In October, 1988, Judge Marshall stayed trial of this case pending the United States Supreme Court's decision concerning the scope of § 1981 in *Patterson, supra.* Judge Marshall subsequently took senior status and the case was reassigned to this Court in December, 1988. On August 2, 1989, at a status hearing, the Court noted that trial had been stayed pending the Su-

preme Court's decision in *Patterson,* and requested from the parties memoranda regarding the applicability of *Patterson* to this case. The Court also set a trial date of August 22.

On August 7, 1989, defendant filed a motion to dismiss the case with prejudice in light of *Patterson,* arguing that the Supreme Court's opinion in that case should be read as holding that discharge is conduct which is not actionable under § 1981.

## III. ANALYSIS

On June 15, 1989, the Supreme Court, in an opinion by Justice Kennedy, drastically limited the application of 42 U.S.C. § 1981, declaring that "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). In *Patterson,* the plaintiff brought an action under § 1981, alleging that the defendant harassed her, denied her a promotion, and discharged her, all for racial reasons. The district court permitted the discharge and promotion claims to reach the jury, but held that the harassment claim was not actionable under § 1981. The Court of Appeals affirmed, as did the Supreme Court. Although the Court refused to overrule *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), in which it held that § 1981 prohibits racial discrimination in the making and enforcement of private contracts, the Court concluded that racial harassment claims concerning the conditions of employment are not actionable under § 1981. Justice Kennedy's majority opinion adopted a strict construction of the statute, reasoning that such a construction is dictated by the very language of § 1981, which specifically protects only two rights —"the same right ... to make ... contracts" and "the same right ... to ... enforce contracts [as white persons]." *See*

1. Defendant's motion is captioned "motion for judgment on the pleadings," but the court deems it more appropriate to consider it as a motion to dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

*Patterson,* 109 S.Ct. at 2372. Harassment, the Court concluded, is conduct which occurs after the formation of a contract and which does not interfere with the right to make a contract or to enforce established contract obligations. *Id.* at 2376.

The Court in *Patterson* declined to address whether the defendant's failure to promote the plaintiff constituted an actionable violation of § 1981, because the defendant had never made the argument that a failure to promote was not within the scope of the statute. *Id.* at 2377. Nevertheless, the Court cast considerable doubt as to the validity of promotion claims, explaining that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.*

Throughout the *Patterson* opinion, the Court unequivocally distinguished between conduct which occurs prior to the formation of a contract and conduct which occurs after the formation of a contract in defining the scope of § 1981:

> [Section 1981] prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by the state contract law and Title VII.

*Id.* at 2372–73.

Although, as plaintiff correctly notes, *Patterson* does not address the issue of whether an alleged discriminatory discharge is actionable under § 1981, several courts have grappled with this question in the two months since the Supreme Court's decision. At first blush, it would seem that *Patterson*'s plain language and support of a "bright line" rule clearly establish that the boundaries of § 1981 do not extend beyond the actual making of the contract. Nonetheless, one court has chosen to narrowly interpret *Patterson*'s holding by focusing on what the Court neglected to explicitly state. In *Padilla v. United Air Lines,* 716 F.Supp. 485 (D.Colo.1989), the District Court of Colorado asserted that "the [Supreme] Court did not say that termination of an employee does not involve the formation process," and went on to interpret the right to *make* a contract as the right to *enjoy the benefits* of the contract. *Id.,* at 489. The court then concluded that:

> [T]ermination is part of the making of a contract. A person who is terminated because of his race, like one who was denied an employment contract because of his race, is without a job. Termination affects the existence of the contract, not merely the terms of its performance. Thus, discriminatory termination directly affects the right to make a contract contrary to § 1981.

*Id.,* at 490.

After careful consideration of the Supreme Court's opinion in *Patterson,* this Court has determined that it must respectfully disagree with the Colorado court. If there were any indication that the right to make a contract under § 1981 should be construed broadly as the right to enjoy the benefits of that contract, the Colorado court would no doubt be correct in its reasoning. But the Court in *Patterson* did not interpret the right to make a contract under § 1981 in this manner. Justice Kennedy's repeated emphasis on the distinction between conduct which occurs *before* a contract is formed and conduct which occurs *after* it is formed reflects an extremely narrow interpretation of the right to make a contract guaranteed by § 1981, one which encompasses only the right to *enter into* a contract. Thus, under *Patterson,* once an individual has secured employment, the statute's protection of the right to make a contract is at an end. With respect to conduct which occurs after that point—in-

cluding discharge—the individual must look to the more expansive provisions of Title VII. On this point, the Court was explicit:

> [Racial harassment], reprehensible though it be if true, is not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process. Rather, such conduct is actionable under the more expansive reach of Title VII of the Civil Rights Act of 1964....
>
> Interpreting § 1981 to cover postformation conduct unrelated to an employee's right to enforce her contract ... is not only inconsistent with that statute's limitation to the making and enforcement of contracts, but would also undermine the detailed and well-crafted procedures for conciliation and resolution of Title VII claims....
>
> ....
>
> By reading § 1981 not as a general proscription of racial discrimination in all aspects of contractual relations, but as limited to the enumerated rights within its express protection, specifically the right to make and enforce contracts, we may preserve the integrity of Title VII's procedures without sacrificing any significant coverage of the civil rights laws. Of course, some overlap will remain between the two statutes: specifically, a refusal to enter into an employment contract on the basis of race.... But this is precisely where it would make sense for Congress to provide for the overlap.

*Id.* 109 S.Ct. at 2374–2375 (footnote omitted). *See also Brooms v. Regal Tube Co.,* 881 F.2d 412, 424 (7th Cir.1989) (claim regarding post-formation conduct must be brought under Title VII, in light of *Patterson* ).

This Court therefore concludes that plaintiff's discharge from employment is beyond the scope of § 1981 as construed in *Patterson.* Without question, this holding signifies a dramatic departure from prior caselaw interpreting the rights protected by § 1981; yet, the plain language of Justice Kennedy's opinion in Patterson leaves no room for any other result.

The Court notes that Judge Shadur appears to have reached the same conclusion. In two recent orders, he has dismissed all pending § 1981 claims and permitted the plaintiffs to proceed solely under Title VII. Judge Shadur determined that *"Patterson v. McLean Credit Union* ... has now provided this and all other federal courts with the definitive reading of Section 1981," (*Woods v. Miles Pharmaceuticals,* No. 87 C 4944, 1989 WL 76171, LEXIS op. at *1–*2 (N.D.Ill. June 30, 1989) (LEXIS, Genfed Library)) which is "that Section 1981 does not encompass racial discrimination in the course of employment (as contrasted with racial discrimination in entering—or not entering—into an employment contract.)" *Conley v. Univ. of Chicago Hospitals,* No. 89 C 5386, 1989 WL 84156, LEXIS op. at *1 (N.D.Ill. July 13, 1989) (LEXIS, Genfed Library).

Plaintiff also asserts that defendant denied him the ability to enforce his established contractual right, and that his claim is thus actionable under this second prong of § 1981. Specifically, Hall contends that although defendant suspended him after alleging that he committed a "major cause infraction" of certain safety rules, defendant was bound, by the established procedures of the hospital, to issue him a warning. The defendant's purported failure to issue this warning, in Hall's view, hampered his ability to enforce his employment contract.

*Patterson* indicates that " 'the same right ... to ... enforce contracts ... as is enjoyed by white citizens,' embraces protection of a legal process, that will address and resolve contract law claims without regard to race." *Id.* 109 S.Ct. at 2373. However, *Patterson* also makes clear that this right "does not ... extend beyond conduct by an employer which impairs an employee's ability to enforce through *legal process* his or her established contract rights." *Id.* (emphasis added). Indeed, the Supreme Court pointedly focused on the

plaintiff's ability—or lack thereof—to gain access to the courts or to nonjudicial methods of adjudicating disputes in discussing the scope of this second right protected by § 1981:

> [P]rovided that plaintiff's access to state court or any other dispute resolution process has not been impaired by either the state or a private actor, the plaintiff is free to enforce the terms of the contract in state court, and cannot possibly assert, by reason of the breach alone, that he has been deprived of the same right to enforce contracts as is enjoyed by white citizens.

*Id.* at 2376 (citation omitted). Thus, assuming that defendant in this case *did* violate its own rules and that plaintiff was therefore entitled to a warning before he was automatically suspended, such conduct is not the sort of interference with the enforcement of contracts which the Supreme Court held to be within the scope of the statute.[2]

## IV. CONCLUSION

As a general rule, the *Patterson* Court's decision does not render victims of discrimination without legal recourse. As the Supreme Court explained in great detail, the broad protections of Title VII remain available: "Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards

the resolution of these claims through conciliation rather than litigation." *Patterson,* 109 S.Ct. at 2374–75. Unfortunately, in the instant case, plaintiff's Title VII claim was untimely, as Judge Marshall concluded. Because the Court must now also dismiss plaintiff's sole remaining claim under 42 U.S.C. § 1981 in light of *Patterson,* defendant's motion to dismiss the complaint is granted.[3]

---

**2.** Plaintiff also seems to argue that his discharge was retaliatory, "[growing] ultimately out of his complaints about the inability of black employees to obtain favorable positions as readily as white employees." Plaintiff's Memo at 3. The Court notes, however, that this is not alleged in the complaint, although the EEOC charge attached to the complaint does assert retaliatory discharge. Further, because the Court has determined that plaintiff's discharge is not actionable under § 1981, the fact that the discharge may have been retaliatory has no impact on the the Court's holding. *See Dangerfield, Kimble, and Stuart v. Mission Press,* No. 88–7199, 1989 WL 88199, LEXIS op. at *3–*4 (N.D.Ill. July 27, 1989) (LEXIS, Genfed Library) (court found retaliation argument unavailing as plaintiffs' access to legal enforcement remained unimpaired). *See also Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49, 51 (D.D.C. 1989).

**3.** The Court recognizes that at least one court has decided not to apply *Patterson* retroactively. *See Gillespie v. First Interstate Bank of Wisconsin Southeast,* 717 F.Supp. 649, 651 n. 2 (E.D. Wis.1989). That case, however, had already been tried and the parties were awaiting decision on post-verdict motions when the *Patterson* decision was handed down. In light of the factors enumerated in *Chevron Oil Company v. Husan,* 404 U.S. 97, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), and the fact that the instant case is still at the pre-trial stage, this Court concludes that *Patterson* should be applied retroactively. *See also Williams,* LEXIS op. at *1–*2, ("[a]pplying the *Chevron* factors, the Court in the instant case—which has not gone to trial—finds no special equitable reasons to depart from the general rule in favor of applying new judicial decisions to pending cases....").