Brenda A. **COLEMAN**, Plaintiff,

v.

**DOMINO'S PIZZA, INC.**, Defendant.

Civ. A. No. 89–0073–BH.

United States District Court,
S.D. Alabama, S.D.

Jan. 9, 1990.

Henry Brewster, Mobile, Ala., for plaintiff.

G. Sage Lyons, Charles L. Miller, Jr., Mobile, Ala., for defendant.

## MEMORANDUM OPINION AND ORDER

HAND, Senior District Judge.

This cause comes before the Court on defendant's motion for partial summary judgment, filed September 20, 1989. Defendant seeks summary judgment as to count two of the complaint, which is based on 42 U.S.C. § 1981, alleging there is no genuine issue as to any material fact. Af-

ter reviewing, considering and weighing all of the pleadings on file in this cause and the applicable law, the Court finds that defendant's motion is due to be and is hereby, GRANTED.

Plaintiff, Brenda Coleman, was originally hired by Defendant on December 5, 1986. She was subsequently promoted to store president, and was working in this capacity at the time of her termination on April 3, 1988. Plaintiff contends that she was terminated from her employment because she was a black female. Based upon this allegation, she filed the present action seeking redress under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981.[1] The present motion does not involve plaintiff's Title VII claim, but is only directed toward the 42 U.S.C. § 1981 claim.

The Supreme Court recently delineated the application of § 1981 in the context of employment discrimination in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Court made it forcefully clear that § 1981 does not provide relief for discrimination in the post-contract setting. Rather, § 1981 by its language prohibits discrimination only in the making and enforcement of contracts, and claims outside the narrow protection of these two specific rights are not actionable. The Court stated:

"By its plain terms, the relevant provision in § 1981 protects two rights: 'the same right ... to make ... contracts' and 'the same right ... to ... enforce contracts.' The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to

---

1. Title 42 U.S.C. § 1981 reads as follows:
   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII."

*Id.*, —— U.S. at ——–——, 109 S.Ct. at 2372–2373, 105 L.Ed.2d at 150–51.

As to the second protection provided in § 1981, the Court stated:

" '[T]he same right ... to ... enforce contracts ... as is enjoyed by white citizens,' embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices."

*Id.*, at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 151.

The *Patterson* Court did not expressly address the issue presently before the Court, that is, whether an alleged discriminatory discharge is actionable under § 1981, but the principles espoused by that decision are directly applicable to this issue. Plaintiff cites in support of her argument to five cases where the Supreme Court has assumed that such discharges were forbidden by § 1981.[2] However, all of these cases were decided before *Patterson,* and not being dispositive of the issue, the more recent decision in *Patterson* controls.

■ Upon review of the plain language in *Patterson*, this Court finds clear support for a "bright line" rule which confines the actionable cases under § 1981 to those involving the actual making or enforcement of a contract. This interpretation is directly in line with the strict construction of the statute adopted by the *Patterson* Court. As the Supreme Court stated:

"Section 1981 cannot be construed as a *general proscription* of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts."

*Id.*, —— U.S. at ——, 109 S.Ct. at 2372, 105 L.Ed.2d at 150. (Emphasis added) (citation omitted).

■ Plaintiff would have this Court adopt a broad interpretation of the applicability of § 1981, thereby narrowing the effect of the *Patterson* decision. Plaintiff relies most strongly in advancing this argument on *Padilla v. United Air Lines*, 716 F.Supp. 485 (D.Colo.1989), a case in which the District Court of Colorado held that the right to make a contract included the right to enjoy the benefits of the contract. *Id.* at 490. The *Padilla* Court stated:

[T]ermination is part of the making of a contract. A person who is terminated because of his race, like one who was denied an employment contract because of his race, is without a job. Termination affects the existence of the contract, not merely the terms of its performance. Thus, discriminatory termination directly affects the right to make a contract contrary to § 1981.

*Id.* However, the Supreme Court in *Patterson* cautioned against just such ingenious construction of the statute. The Court stated:

"In his separate opinion, Justice Stevens construes the phrase 'the same right ... to make ... contracts' with ingenuity to cover various postformation conduct by

**2.** *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

the employer. But our task here is not to construe § 1981 to punish all acts of discrimination in contracting in a like fashion, but rather merely to give a fair reading to scope of the statutory terms used by Congress. We adhere today to our decision in *Runyon* that § 1981 reaches private conduct, but do not believe that holding compels us to read the statutory terms 'make' and 'enforce' beyond their plain and common sense meaning."

*Patterson,* —— U.S. at —— n. 6, 109 S.Ct. at 2377 n. 6, 105 L.Ed.2d at 156 n. 6.

After careful consideration of the Supreme Court's opinion in *Patterson,* this Court finds that plaintiff's argument must fail. As set out above, the Supreme Court in *Patterson* narrowly interpreted the protection granted under § 1981 by the phrase "right to make a contract". In fact, under *Patterson,* once a party has secured employment, the protection afforded by § 1981, to make a contract, is at an end. If the employer has breached the contract that was entered into, the individual can sue under state law for its enforcement or under Title VII if the breach was wrongful. This right to access the legal process, to seek enforcement of the terms, conditions or of the contract itself under the above laws, is protected by § 1981. Therefore, a party is not left without a remedy for wrongful acts of the employer under this application of the statute. Were this Court to hold otherwise, it would be contributing to the overlap of coverage between § 1981 and Title VII. The *Patterson* Court clearly condemned any such interpretation, stating

that "[u]nnecessary overlap between Title VII and § 1981 would also serve to upset the delicate balance between employee and employer rights struck by Title VII." *Id.,* —— U.S. at ——, n. 4, 109 S.Ct. at 2375, n. 4, 105 L.Ed.2d at 154, n. 4.

As was the case in *Patterson* concerning discriminatory harassment, the present claim of racially motivated discharge is covered by Title VII. Therefore, as the Supreme Court stated, "[t]hat egregious racial [discharge] of employees is forbidden by a clearly applicable law (Title VII), moreover, should lessen the temptation for this Court to twist the interpretation of another statute (§ 1981) to cover the same conduct." *Id.* at ——, 109 S.Ct. at 2375, 105 L.Ed.2d at 153. The parties do not dispute that Title VII protects against the type of conduct presently at issue, that is, discriminatory discharge; therefore, this Court should not twist § 1981 to also cover the same conduct. By so holding, this Court "preserves the integrity of Title VII's procedures without sacrificing any significant coverage of the civil rights laws." *Id.,* at ——, 109 S.Ct. at 2375, 105 L.Ed.2d at 154.

Whereby, following the rationale set forth by the Supreme Court in *Patterson* and outlined herein, this Court finds that discriminatory discharge, like racial harassment, is post-contract formation conduct, occurring after the commencement of the employment relationship and not affecting the employee's right to make or enforce a contract. Accordingly, plaintiff's discharge was beyond the scope of protection provided by § 1981.[3]

**3.** Courts construing § 1981 since *Patterson* have in the majority rejected attempts to redress discriminatory discharges, demotions or retaliatory discharges, under the rubric of that statute. These decisions, thereby, buttress this Court's decision herein, finding no coverage under § 1981 for discriminatory discharges. *See McGinnis v. Ingram Equipment Co., Inc.,* 888 F.2d 109 (11th Cir.1989) (implying that a discriminatory demotion, like racial harassment and discriminatory working conditions, are no longer actionable after *Patterson*); *Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989) (retaliatory discharge); *Jordan v. United States West Direct Co.,* 716 F.Supp. 1366 (D.Colo.1989) (discriminatory demotion); *Williams v. National RR Passenger Corp.,* 716 F.Supp. 49 (D.D.C.

1989) (retaliatory demotion); *Rick Nolan's Auto Body Shop v. Allstate Ins. Co.,* 718 F.Supp. 721 (N.D.Ill.1989) (discriminatory termination of contract); *Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552 (S.D.Tex.1989) (discriminatory discharge); *Hall v. County of Cook, State of Ill.,* 719 F.Supp. 721 (N.D.Ill.1989) (discriminatory discharge); *Mathis v. Boeing Military Airplane Co.,* 719 F.Supp. 991 (D.Kan.1989) (retaliatory discharge); *Rivera v. AT & T Info. Systems, Inc.,* 719 F.Supp. 962 (D.Colo.1989) (discriminatory discharge); *Morgan v. Kansas City Area Transp. Authority,* 720 F.Supp. 758 (W.D.Mo.1989) (discharge); *Alexander v. New York Medical College,* 721 F.Supp. 587 (S.D.N.Y.1989) (discriminatory demotion and discharge); *Johnson v.*

Having decided that plaintiff's claim is not actionable under § 1981 after *Patterson,* the decision must now be made as to whether to apply that decision retroactively. In determining whether to apply a decision retroactively, this Court is guided by the factors handed down in *Chevron Oil Company v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted). The Supreme Court in *Chevron* proposed a three-part test to determine whether courts should apply a principle of law retroactively. In reaching this decision the Court should balance: (1) whether a judicial principle "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) whether retroactive operation will advance or retard the purpose and effect of the new rule; and (3) whether applying the statute retroactively will produce inequitable results. *Id.*

One Court applying the *Chevron* factors has explicitly held that *Patterson* should not be applied retroactively. *See Gillespie v. First Interstate Bank of Wisconsin Southeast,* 717 F.Supp. 649 (E.D.Wisc. 1989). Plaintiff relies on that decision as support for nonretroactive application of *Patterson* to the present case. However, in *Gillespie,* the case had already been tried and was awaiting decision on post-tri-

al motions at the time that *Patterson* was handed down, unlike the present case, in which the trial has not been held.

▰▰▰ In reaching a determination as to whether to apply a decision retroactively, the normal presumption is that every decision should be so applied. *See Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). In applying the first prong of the *Chevron* test, whether a new principle of law is established, it is arguable that *Patterson* did overrule law upon which the plaintiff could rely, although one court has held that *Patterson* did not announce a new rule of law. *See Morgan v. Kansas City Area Transportation Authority,* 720 F.Supp. 758 (W.D.Mo. 1989).[4] As to the second prong, it is clear that failure to apply *Patterson* retroactively would retard the purpose for the new rule. The present case, if allowed to proceed on the § 1981 claim, would "unnecessar[ily] overlap Title VII and ... would ... serve to upset the delicate balance between the employee and employer rights struck by Title VII." *Patterson,* 105 S.Ct. at 154, n. 4. Furthermore, such application would "undermine the detailed and well-crafted procedures for conciliation and resolution of Title VII," thereby frustrating the purpose of Congress in passing Title VII. *Patterson,* —— U.S. at ——, 109 S.Ct. at 2374, 105 L.Ed.2d at 153. The second *Chevron* factor clearly favors retroactive

*United States Elevator Corp.,* 723 F.Supp. 1344 (E.D.Mo.1989) (discriminatory discharge); *Conley v. Univ. of Chicago Hosp.,* 50 Fair Empl.Prac. Cas. (BNA) 1145, 1989 WL 84156 (N.D.Ill.1989); *Dangerfield v. The Mission Press,* 50 Fair Empl. Prac.Cas. (BNA) 1171, 1989 WL 88199 (N.D.Ill. 1989) (demotion); *Carter v. Aselton,* 50 Fair Empl.Prac.Cas. (BNA) 251 (M.D.Fla.1989) (discharge); *Leong v. Hilton Hotels Corp.,* 50 Fair Empl.Prac.Cas. (BNA) 738 (D.Haw.1989) (lessening of responsibility); *Gonzalez v. Home Ins. Co.,* 50 Fair Empl.Prac.Cas. (BNA) 1173, 1989 WL 106467 (S.D.N.Y.1989) (contract termination). As to the minority of cases which have held otherwise, this Court cannot agree. *See Booth v. Terminix Intern. Co.,* 722 F.Supp. 675 (D.Kan.1989); *Birdwhistle v. Kan. Power and Light Co.,* 723 F.Supp. 570 (D.Kan.1989); *Padilla v. United Air Lines,* 716 F.Supp. 485 (D.Colo. 1989); *Gamboa v. Washington,* 716 F.Supp. 353 (N.D.Ill.1989); *Jones v. Pepsi Cola Gen. Bottler, Inc.,* No. 88–0739, 1989 WL 167597 (W.D.Mo. Aug. 29, 1989) (LEXIS, Genfed Library, Dist.

file); *English v. Gen. Dev. Corp.,* 717 F.Supp. 628 (N.D.Ill.1989).

**4.** The majority of courts that have faced the issue have implicitly found the decision should be retroactively applied. *See e.g., Brooms v. Regal Tube Co.,* 881 F.2d 412 (7th Cir.1989); *Becton v. Burlington Northern R.R. Co.,* 878 F.2d 1436 (6th Cir.1989) (unpublished decision); *McGinnis v. Ingram Equip. Co., Inc,* 888 F.2d 109 (11th Cir.1989); *Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552 (S.D.Tex.1989); *Conely v. University of Chicago Hospitals,* 50 Fair Empl. Prac.Cas. (BNA) 1145 (N.D.Ill.1989). Moreover, at least four courts have explicitly addressed the issue, finding that *Patterson* should be retroactively applied. *See Morgan v. Kansas City Area Transp. Authority,* 720 F.Supp. 758 (W.D.Mo. 1989); *Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989); *Hall v. County of Cook, State of Illinois,* 719 F.Supp. 721 (N.D.Ill.1989); *Brackshaw v. Miles, Inc.,* 723 F.Supp. 60 (N.D.Ill.1989).

application of the *Patterson* decision. Turning now to the third factor, whether retroactive application will produce inequitable results, plaintiff must show that he or she will be subject to costs above and beyond those that would have been incurred if the new principle had been in force all along. This factor also weighs in favor of retroactive application. Plaintiff may have expected to be able to assert a claim under § 1981 before the *Patterson* decision, but she has failed to show that she has expended costs above and beyond those that she would have been forced to expend if *Patterson* had been in force all along.

All three of the *Chevron* factors involve aspects of equity. Plaintiff has failed to show that equity requires a nonretroactive application of *Patterson;* therefore, the presumption of retroactive application governs. Accordingly, the principles set forth in *Patterson,* as interpreted by this Court, apply retroactively to plaintiff's § 1981 claim.

Wherefore, the above premises considered, defendant's motion for partial summary judgment, as to count two of the complaint, is due to be and is hereby GRANTED.

It is so ORDERED.