**Patricia JACKSON, Plaintiff,**

v.

**Jackie A. McCLEOD, d/b/a The Gift Horse, Defendant.**

**Civ. A. No. CV–89–0727–B.**

United States District Court,
S.D. Alabama, S.D.

Oct. 1, 1990.

Ronnie L. Williams, Mobile, Ala., for plaintiff.

William Kimbrough, Frank Woodson, Mobile, Ala., for defendant.

## MEMORANDUM OPINION AND ORDER

BUTLER, District Judge.

### INTRODUCTION

Plaintiff–Patricia Jackson ("Jackson") brought this action pursuant to 42 U.S.C. § 1981 alleging that defendant–Jackie A. McCleod ("McCleod") refused to hire her as a waitress in defendant's restaurant and that the refusal was racially motivated. Plaintiff seeks declaratory relief, injunctive relief, back pay and lost benefits, punitive damages, and attorney's fees and costs. Plaintiff properly invoked the jurisdiction of this Court under 28 U.S.C. §§ 1331 & 1343. A trial was conducted ore tenus on August 29, 1990.

### FINDINGS OF FACT

Jackson is a black female residing in Baldwin County, Alabama. She has several years of experience working as a waitress. Defendant, a white female, is the owner and operator of The Gift Horse restaurant located in the City of Foley, Baldwin County, Alabama.

Some time prior to June 2, 1989, plaintiff learned that there was an opening for a waitress at defendant's restaurant. After plaintiff obtained and completed an application, an interview was arranged for 4:00 p.m. on June 2, 1989, which was a Friday. The interview took place as scheduled. During the course of the interview, Jackson informed McCleod that she was applying for the waitress position and could work part time. Defendant understood that plaintiff was applying for a part-time waitress position. McCleod wrote "waitress" across the top of plaintiff's application.[1]

On Friday, June 2, a verbal contract was entered into between plaintiff and defendant for plaintiff to be employed as a part-time waitress. Jackson's employment was to commence on Monday, June 5. Jackson was to work her first two days in the kitchen as an orientation period, and was then to be moved onto the floor as a waitress.[2]

---

1. At trial plaintiff testified that defendant wrote "waitress" across the top of the application. Defendant testified that she could not recall whether she wrote "waitress" across the top of plaintiff's application. Defendant was unable to produce plaintiff's application and could only offer her surmise that it was thrown away.

2. The defendant's version, which this Court rejects, was that although she knew plaintiff was applying the position of a part-time waitress, she informed plaintiff that she did not hire part-time waitresses and made plaintiff an offer to be part-time kitchen help which was accepted by plaintiff.

Even if this Court accepted defendant's version, that alone would not relieve her of liability under § 1981. Although it would be true that defendant did not refuse to enter into "a contract" with plaintiff, defendant would have rejected plaintiff for the position of waitress and the analysis to be undertaken below with re-

On Sunday, June 4, defendant made up the work schedule for the period June 5 through June 11, 1989 (Defendant's Exhibit 1). According to the schedule plaintiff was to work Monday, Thursday, Friday and Saturday and was scheduled to work as a cook and/or on salads each of those four days.[3]

On the morning of June 5, Jackson went to work at defendant's restaurant and discovered that she had been scheduled to work in the kitchen for four days, as opposed to the two-day orientation period she expected. When defendant arrived later that morning, plaintiff confronted her with having been scheduled in the kitchen all week and asked when she would be put on the floor as a waitress. At this point McCleod manifested her repudiation of the agreement that had been reached between the parties the previous Friday and informed plaintiff that she would not be utilized as a waitress. After some discussion plaintiff departed defendant's establishment.

Also on June 5, defendant took the application of and interviewed Bonnie Bishop, a white female, for the position of waitress. During the course of this interview defendant told Bishop that there was a waitress position available. That same day defendant hired Bishop to fill the waitress position.

## LEGAL ANALYSIS

1. *Availability of Relief Under § 1981*

■ The statute plaintiff has elected to proceed under, 42 U.S.C. § 1981, provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens."

It is now well settled that "[s]ection 1981 generally forbids racial discrimination in the making and enforcement of private contracts, including private employment contracts." *Bobo v. ITT Continental Baking Co.,* 662 F.2d 340, 342 (5th Cir.1981), *cert. denied,* 456 U.S. 933, 102 S.Ct. 1985, 72 L.Ed.2d 451 (1982).

In *Patterson v. McLean Credit Union,* 491 U.S. 164, ——, 109 S.Ct. 2363, 2372–74, 105 L.Ed.2d 132, 150–52 (1989) the Supreme Court provided some guidance as to the proper remedial scope of § 1981:

> By its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct of the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such post-formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

---

spect to whether defendant's proffered reason for the rejection of plaintiff as a waitress was legitimate or a pretext would still be required.

**3.** Obviously, that plaintiff was scheduled to work in the kitchen all four days lends some support to defendant's version that plaintiff was hired solely as kitchen help. However, after hearing all of the testimony and observing the demeanor of the witnesses, this Court has determined, as fact, that plaintiff was hired as a part-time waitress on the afternoon of June 2. The circumstances indicate that McCleod changed her mind about using Jackson as a waitress during the interim between Friday afternoon and when she prepared the schedule on Sunday, or that defendant's subjective intent on Friday afternoon was not to employ Jackson as a waitress although she objectively manifested an intent to do so. In any event, and as already noted, even if this Court accepted defendant's version that plaintiff was hired solely as kitchen help, that alone would not relieve defendant from liability.

. . . .

[Section] 1981 ... covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contractual obligations through legal process.

Of course, the specific holding in *Patterson* is that racial harassment in the course of employment is not actionable under § 1981 because such harassment is post-formation conduct which does not implicate the right to make a contract. *Id.*

While *Patterson* makes it clear that claims of racial harassment during the course of employment are not actionable under § 1981, the lower federal courts have reached inconsistent results in applying *Patterson* to claims alleging a racially discriminatory discharge. *Compare Courtney v. Canyon Television & Appliance Rental,* 899 F.2d 845 (9th Cir.1990); *McKnight v. General Motors Corp.,* 908 F.2d 104 (7th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir.1990) (each applying *Patterson* so as to find a claim of discriminatory discharge not actionable under § 1981) *with Hicks v. Brown Group, Inc.,* 902 F.2d 630 (8th Cir.1990) (holding that *Patterson* does not bar a claim of racially discriminatory discharge under § 1981). Courts within the same district have disagreed over the affect of *Patterson* on discriminatory discharge claims brought under § 1981. *See Rivera v. AT & T Information Sys.,* 719 F.Supp. 962 (D.Colo.1989) (*Patterson* bars claims of discriminatory discharge under § 1981); *Padilla v. United Airlines,* 716 F.Supp. 485 (D.Colo.1989) (*contra*). This division of authority illustrates that *Patterson,* especially when applied outside of the specific factual context there presented, does not provide a bright line rule leading to easy answers to all questions concerning the scope of § 1981.

In the instant case, plaintiff does not allege racial harassment or a discriminatory discharge; rather, plaintiff simply alleges that defendant refused to employ her as a waitress and that such refusal was racially motivated. Although factually dissimilar from the cases discussed above, the instant case presents the same issue—whether plaintiff's claim involves conduct at the formation stage of the contract and thus actionable under § 1981, or whether the conduct complained of constitutes post-formation conduct not actionable under § 1981.

While certainly not dispositive, some of the language used by the courts in the above-discussed cases, including *Patterson* itself, provides this Court with assistance. In *Patterson,* the Court stated that the protection of § 1981 "extends only to the formation of a contract, but not to problems that may arise later from the conditions of *continuing employment.*" *Patterson,* 491 U.S. at —, 109 S.Ct. at 2372, 105 L.Ed.2d at 150 (emphasis added). The Court further stated that nonactionable post-formation conduct "implicates the performance of *established contract obligations* and the *conditions of continuing employment.*" *Id.* 491 U.S. at —, 109 S.Ct. at 2373, at 151 (emphasis added). In *Lavender,* where the alleged discriminatory discharge occurred some seventy days into plaintiffs' ninety-day probationary period, the Fifth Circuit stated that "[b]ecause the contract here was *already established,* the termination amounted to post-formation conduct. As such, it is not actionable under section 1981." *Lavender,* 897 F.2d at 808 (emphasis added). Perhaps most instructive is the language chosen by the court in *Rivera:*

The Supreme Court's rationale in *Patterson, supra,* leads me to the conclusion that under the plain language of Section 1981, discriminatory discharge, like racial harassment amounting to a breach of contract, is post contract formation conduct. Discriminatory discharge occurs after the *commencement of the employment relationship* and does not effect the employee's right to make or enforce contracts.

*Rivera,* 719 F.Supp. at 965 (emphasis added).

On the particular facts presented in the instant case, this Court does not view defendant's refusal to employ plaintiff as a waitress to be post-formation conduct.

While technically a contract may have been formed on Friday, June 2, and strictly speaking any conduct engaged in thereafter was post-formation conduct, the particular facts of this case show why the availability of a remedy under § 1981 should not, in every case, turn on a strict application of state law regarding contract formation. While it may be appropriate for the law of contract formation to play a major, if not decisive, role in the resolution of § 1981 claims alleging racial harassment or discriminatory discharge, in cases such as here presented, where the alleged discriminatory conduct occurred prior to or contemporaneously with *the commencement of the employment relationship,* the subtleties of contract law with respect to formation should assume less importance. Surely, it is not within the spirit of § 1981 or even *Patterson* that the technicalities of contract formation law be determinative of the availability of relief under § 1981 in every case. This Court finds that plaintiff's claim is actionable under § 1981.

### 2. The Merits of Plaintiff's Claim

■ Having found plaintiff's claim actionable under § 1981, it remains to be determined whether plaintiff's claim will succeed on the merits. The *Patterson* case also provides the framework for analysis of a § 1981 claim:

> Under our well-established framework, the plaintiff has the initial burden of proving, by the preponderance of the evidence, a prima facie case of discrimination. The burden is not onerous. Here, [plaintiff] need only prove by a preponderance of the evidence that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected [defendant] either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.
>
> Once the plaintiff establishes a prima facie case, an inference of discrimination arises. In order to rebut this inference, the employer must present evidence that the plaintiff was rejected, or the other applicant was chosen, for a legitimate non-discriminatory reason.

> Although [plaintiff] retains the ultimate burden of persuasion, our cases make clear that she must also have the opportunity to demonstrate that [defendant's] proffered reasons for its decision were not its true reasons. [That is,] that [defendant's] stated reasons are pretextual.

*Patterson,* 491 U.S. at ——, 109 S.Ct. at 2378, 105 L.Ed.2d at 157 (citations omitted).

The evidence presented by plaintiff clearly establishes a prima facie case. As a result of her several years experience Jackson was undoubtedly qualified as a waitress. Plaintiff applied with the defendant for the position of waitress and such a position was then available at defendant's establishment. Although technically speaking plaintiff was "hired" as a waitress on Friday afternoon, June 2, defendant refused to employ or utilize Jackson in that capacity on Monday, June 5. This constituted the rejection of plaintiff by defendant for an available position for which plaintiff was qualified. Subsequent to plaintiff's rejection, defendant continued to take applications for the position of waitress, and in fact, hired Bonnie Bishop, a white female, the same day she rejected Jackson. Plaintiff having established a prima facie case, an inference of discrimination on the part of defendant arises.

Defendant's proffered reason for her rejection of plaintiff was that she preferred full-time employees to part-time. Defendant testified that this preference was based upon her belief that full-time employees were more loyal to her as an employer and presented fewer scheduling problems. However, under this Court's view of the evidence, any assertion of actual reliance upon the stated reasons is, at best, suspect; and, if not "actually relied on the reasons are not sufficient to meet defendants' rebuttal burden." *IMPACT v. Firestone,* 893 F.2d 1189, 1194 (11th Cir.1990).

The same evidence which renders defendant's reliance on her asserted reasons suspect satisfies this Court that the reasons advanced are pretextual. Although defendant testified that she preferred full-time employees to part-time, the evidence shows

that defendant often employed part-time workers, and was doing so at the time Jackson applied with defendant. In fact, defendant hired two part-time waitresses in May of 1988. With respect to defendant's assertion that her preference for full-time employees was based, in part, on her experience that full-time employees gave more allegiance than part-time employees, the evidence, including testimony from defendant herself, showed that there was a high turnover rate at her establishment among both part-time and full-time employees. In support of her contention that part-time employees presented less scheduling problems than full-time employees, defendant's evidence consisted of one incident in which she had problems scheduling a part-time employee over a holiday weekend. Based on the foregoing, this Court concludes that defendant's asserted reasons for her rejection of plaintiff are pretextual.

In summary, plaintiff has established a prima facie case giving rise to an inference to discrimination. Defendant has failed to rebut that inference, and in addition plaintiff has established that the reasons asserted by defendant for her rejection of plaintiff are pretextual. This Court has been convinced that defendant's rejection of plaintiff was racially motivated. Accordingly, this Court finds that plaintiff is entitled to recovery under § 1981.

3. *Damages*

■ The evidence presented in this case will not support an award of punitive damages. There is no evidence that the defendant acted with an evil motive or intent or that defendant's conduct constituted a reckless or gross disregard for plaintiff's civil rights. Further, under the circumstances of this case, plaintiff is not entitled to the injunctive relief sought, *i.e.*, an order requiring defendant to hire plaintiff as a waitress. Defendant operates a small business necessitating a close working relationship between defendant and her employees. In this Court's view it is not in the best interest of either litigant that defendant be required to employ plaintiff as a waitress.

■ Plaintiff is entitled to an award of back pay. The evidence shows that plaintiff would have worked four days a week. In light of plaintiff's part-time status, and considering the schedule submitted as Defendant's Exhibit 1, it appears that plaintiff would have worked somewhere between four and eight hours a day. This Court will split the difference and base the award of back pay upon six hour days, for a total of 24 hours per week. The evidence showed that as a waitress plaintiff would have been paid $2.01 an hour in wages and that a full-time waitress could expect, on a good day, $35.00 to $40.00 in tips. Considering again plaintiff's part-time status, and that all days would be not "good days," the award of back pay will be premised upon the figure of $17.50 a day in tips. According to this Court's calculations, plaintiff is therefore entitled to $118.24 per week in back pay. The period of the award shall be from June 5, 1989, through October 1, 1990, or a period of 69 weeks. Plaintiff is due to recover $8,158.56 as back pay. Given the unliquidated and necessarily estimative nature of this award, an award of prejudgment interest is not appropriate. However, plaintiff is entitled to reasonable attorney's fees and costs.

### ORDER

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED that plaintiff-Patricia Jackson shall recover from defendant-Jackie McCleod the sum of Eight Thousand One Hundred Fifty Eight and ⁵⁶/₁₀₀ ($8,158.56) Dollars, together with reasonable attorney's fees and costs.