**RICK NOLAN'S AUTO BODY SHOP, INC., et al., Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

No. 88 C 7147.

United States District Court,
N.D. Illinois, E.D.

Aug. 29, 1989.

See also, 711 F.Supp. 475.

Herbert Frederick Friedman, Herbert Frederick Friedman, Ltd., Winnetka, Ill., for Rick Nolan's Auto Body Shop, Inc. and Richard T. Nolan, plaintiffs.

Jeffrey Lennard, Margaret S. Determan, and Leslie J. Khoshaba, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant.

ORDER

BUA, District Judge.

Plaintiffs in this action brought suit against defendant Allstate Insurance Company ("Allstate") pursuant to 42 U.S.C. § 1981. In their (First) Amended Complaint, plaintiffs complained that Allstate violated § 1981 by terminating an agreement under which plaintiffs had operated a "direct repair" body shop for Allstate. Plaintiffs claimed that Allstate terminated the agreement solely because the persons who own and operate plaintiffs' body shop are black. After the filing of plaintiffs' (First) Amended Complaint, the Supreme Court issued its decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson,* the Court limited the scope of § 1981 by adopting a narrow interpretation of the right to "make and enforce contracts" protected by § 1981. In light of the ruling in *Patterson,* plaintiffs now concede, as they must, that any racial discrimination on the part of Allstate in terminating its direct repair shop agreement with

plaintiffs does not constitute a proper factual basis for a § 1981 claim.

Plaintiffs, however, have not abandoned their § 1981 action. Instead, plaintiffs have filed a Second Amended Complaint which contains new allegations in support of their § 1981 claim. Specifically, plaintiffs now claim that after Allstate terminated its direct repair shop agreement with plaintiffs, plaintiffs asked Allstate to enter into a new contract reinstating plaintiffs' designation as direct repair shop operators. Plaintiffs further claim that Allstate refused to enter into the newly proposed contract for purely racially discriminatory reasons. Plaintiffs contend that these new allegations form a sufficient basis for their § 1981 claim. Allstate argues, however, that the new allegations in plaintiffs' Second Amended Complaint are not sufficient to state a § 1981 claim under *Patterson*. Therefore, relying on *Patterson*, Allstate has moved to dismiss the Second Amended Complaint.

In *Patterson*, a black woman brought a § 1981 action against her employer, a credit union, after she was laid off from her job as a teller. She claimed the credit union harassed her, failed to promote her, and fired her, all because of her race. 109 S.Ct. at 2368–69. The Supreme Court found that even if the credit union had discriminated against plaintiff in the manner plaintiff alleged, plaintiff had no § 1981 claim because the credit union's discriminatory actions did not abridge plaintiffs' right to "make and enforce contracts."

Plaintiffs argue that the instant case is distinguishable from *Patterson* because their Second Amended Complaint, unlike the complaint in *Patterson*, complains of discrimination which prevented the making of a contract—the contract plaintiffs sought reinstating their direct repair shop status. This court, however, finds that plaintiffs' disingenuous pleading has not saved their § 1981 action. The proposed second contract on which plaintiffs base their § 1981 claim was not really a "new" contract at all; plaintiffs merely sought reinstatement of the same rights, duties, and obligations established by their prior

agreement with Allstate. Therefore, although plaintiffs have attempted to present their § 1981 claim as charging discrimination in the making of a "new" contract, plaintiffs' claim essentially is based on the discrimination which allegedly occurred in the termination of their prior agreement with Allstate. Under these circumstances, the court finds that plaintiffs' allegations concerning the proposed second contract are not sufficient to state a § 1981 claim under *Patterson*. To hold otherwise would completely vitiate the ruling in *Patterson*, wherein the court stated:

> ... the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such post-formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

109 S.Ct. at 2373. *Patterson*'s distinction between preformation discrimination—actionable under § 1981—and postformation discrimination—not actionable under § 1981—would be obliterated under plaintiffs' theory of recovery. Discrimination plaintiffs could turn postformation conduct into preformation conduct simply by alleging that they sought a "new" contract reinstating the terms of a prior agreement. This court will not read *Patterson* as permitting such an absurd result. Therefore, the court finds that the allegations in plaintiffs' Second Amended Complaint do not sustain a § 1981 claim under *Patterson*. Accordingly, plaintiffs' Second Amended Complaint is dismissed.