**Felicia CARTER, Plaintiff,**

v.

**O'HARE HOTEL INVESTORS, et al., Defendants.**

**No. 88 C 10713.**

United States District Court,
N.D. Illinois, E.D.

Nov. 1, 1989.

John S. Elson, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff.

Andrew J. Fisher, Rudnick & Wolfe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Felicia Carter, a black female, was a reservationist at the Sheraton International Hotel ("the Sheraton") from October 1983 to July 1985, when she was laid off. Carter worked without a written contract or any express agreement specifying the duration of her employment. In May 1985, defendant O'Hare Hotel Investors purchased the Sheraton. Before assuming control, the defendants notified Sheraton employees that there would be a reduction in work force following a performance review of the staff. Carter was laid off two months after the defendants purchased the Sheraton. Carter filed a complaint for discriminatory termination in violation of Title VII and 42 U.S.C. § 1981. Complaint ¶¶ 14–17, 19–26. Thereafter, the Supreme Court decided *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), restricting the scope of 42 U.S.C. § 1981. Carter then amended her complaint in an attempt to recast a § 1981 violation consistent with *Patterson*. Defendants move to dismiss Carter's § 1981 claims under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), to the extent that her claims are barred by *Patterson*.

## DISCUSSION

Section 1981 only covers racial discrimination in the making and enforcement of contracts. *Patterson*, 109 S.Ct. at 2372. Basing its interpretation of § 1981 narrowly on statutory language, the Supreme Court instructed lower courts to limit their interpretation of the terms "make" and "enforce" to a plain and common sense meaning. *Id.* at 2377 n. 6. The bright line drawn by *Patterson* distinguishes conduct that occurs before a contract is formed from conduct that occurs thereafter. Promotion denials, for example, are only actionable under § 1981 if the position denied would have offered a new and distinct contractual relationship with the employer. *Patterson*, 109 S.Ct. at 2375. By limiting § 1981 to conduct at the initial formation of a contract and conduct that impairs the right to enforce contractual obligations through legal process, *id.* at 2374, the only overlap with Title VII is the refusal to *enter* into an employment contract on the basis of race. *Id.* at 2375. This overlap makes sense because "[a]t this stage of the employer-employee relationship Title VII's mediation and conciliation procedures would be of minimal effect, for there is not yet a relation to salvage." *Id.* at 2375.

Carter's original complaint was based on a discriminatory termination claim. In *Patterson*, the Supreme Court did not specifically address whether racially motivated terminations are actionable under § 1981. However, the limitation of § 1981 to only pre-contract formation conduct has been read by several courts to bar termination claims under § 1981. *Hall v. County of Cook*, 719 F.Supp. 721 (N.D.Ill.1989); *Sofferin v. American Airlines, Inc.*, 717 F.Supp. 597 (N.D.Ill.1989). *But see Padilla v. United Air Lines*, 716 F.Supp. 485 (D.Colo.1989) (termination is part of making contract); *Birdwhistle v. Kansas Power & Light Co.*, 723 F.Supp. 570 (D.Kan. 1989) (termination directly relates to contract enforcement).

Carter amended her complaint to avoid *Patterson*. She alleges in conclusory terms that her employment relationship was a series of ongoing daily unilateral contracts rather than a single employment contract of an indefinite duration. Thus, instead of being terminated from her job as a reservationist, she claims she was refused a unilateral contractual offer of daily

employment. Amended complaint ¶¶ 19–20. This recasting of Carter's employment relationship is strained and legally unsound. Under Illinois law, a person who works for another in the absence of an express agreement specifying the duration of employment has an employment relationship that is terminable at will by either party. *Rynar v. Ciba–Geigy Corp.*, 560 F.Supp. 619, 624 (N.D.Ill.1983).

■ On a motion to dismiss, the court must accept the well-pleaded allegations of the complaint as true and view those allegations in a light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). However, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Capalbo v. PaineWebber, Inc.*, 694 F.Supp. 1315, 1318 (N.D.Ill.1988). The complaint should be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Gomez*, 811 F.2d at 1039.

■ Carter's legal conclusion that her employment relationship consisted of an ongoing series of daily unilateral contracts is not accepted by this court. To the extent that the complaint alleges a § 1981 claim based upon a racially motivated termination, it is precluded by *Patterson*. *Hall*, 719 F.Supp. at 723–724. Similarly, to the extent the complaint alleges a racially motivated decision to not rehire her, it fails to state a claim under § 1981. Reinstatement of the identical employment relationship, with the same rights, duties and obligations of the old agreement, is not a new and distinct relation covered by § 1981. *See Rich Nolan's Auto Body Shop, Inc. v. Allstate Ins. Co.*, 718 F.Supp. 721 (N.D.Ill. 1989) (refusal to renew contract not covered under § 1981).

■ The remainder of Carter's § 1981 claim alleges a unique set of facts not addressed by post-*Patterson* decisions. The purchase of a company presents an opportunity for a new and distinct contractual relationship between the company's employees and the new owners. The new employment relationship appears to be covered by § 1981. This interpretation is consistent with *Patterson* because at the takeover stage, there is not yet a relationship between the new owners and the employees to salvage through Title VII's mediation and conciliation procedures. If the former owners of the Sheraton had fired Carter, the new owners' refusal to hire her for racial reasons would be actionable under § 1981. *Patterson*, 109 S.Ct. at 2372.

Carter, however, was terminated two months after the defendants purchased the Sheraton. The factual allegations of the complaint do not clearly describe Carter's relationship with the new owners during the two months she worked for them. If the two months were a probationary period, or if she was hired by the owners on a temporary basis until the performance review was completed, her § 1981 claim is precluded by *Patterson*. *See Sofferin*, 717 F.Supp. 597 (promotion of employee from probationary to tenured is not new and distinct relation covered by § 1981). However, construing the complaint in a light most favorable to Carter, the entire two-month period may be viewed a part of a transitional process essential to forming a new contractual relationship with a new employer.

In addition, Carter alleges that before the defendants took control of the Sheraton, they decided on a management strategy to increase profits, in part, by removing black employees from the reservations department. Thus, the two months Carter worked for defendants might also be viewed as a sham defendants used to cover up their decision not to hire black reservationists when they purchased the Sheraton.

■ Carter also argues that the defendants impaired her ability to enforce her contract rights in a manner actionable under § 1981. Section 1981 protects access to legal process that will address and resolve contract claims, including wholly private efforts to obstruct nonjudicial methods of adjudicating disputes. *Patterson*, 109 S.Ct. at 2373. Carter alleges that the defendants delayed responding to the Illinois

Human Rights Commission and, when pressed to respond, provided knowingly incomplete and false information. Amended complaint ¶ 39. Carter does not allege that the defendants impaired her access to the Illinois Human Rights Commission or to this court. Section 1981, however, accomplishes nothing more than the removal of *legal* disabilities to enforce a contract. *Id.* citing *Runyan v. McCrary,* 427 U.S. 160, 195 n. 5, 96 S.Ct. 2586, 2606 n. 5, 49 L.Ed.2d 415 (1976) (dissenting opinion of White, J.). Carter has alleged no such legal disabilities. The acts of defendants that she complains of are redressable by the Illinois Human Rights Commission. *See* Ill.Ann.Stat. ch. 68, § 8–106 (Smith–Hurd 1989).

Accordingly, defendants' motion to dismiss Count II is denied to the extent that Carter claims the two months she worked for defendants were incident to formation of a new employment relationship with a new employer and to the extent that she claims defendants' two-month review was a pretext to conceal their decision not to hire her as a reservationist for reasons of race.