Joan **BRERETON**, et al., Plaintiffs,

v.

**COMMUNICATIONS SATELLITE CORPORATION, Defendant.**

Civ. A. No. 86–3082 (CRR).

United States District Court, District of Columbia.

April 17, 1990.

See also, 116 F.R.D. 162.

Robert A.W. Boraks of Heller, Temple, Boraks & Bullock, Washington, D.C., for plaintiffs.

Robert J. Smith, Anne McCully Murphy and Neal D. Mollen of Morgan, Lewis & Bockius, Washington, D.C., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

This is yet another one of the many § 1981 employment discrimination cases that must be completely re-evaluated in light of the Supreme Court's intervening decision in *Patterson v. McLean Credit Union,* — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Suing in their individual capacities and on behalf of a class of similarly-situated persons,[1] the seven black plaintiffs allege that the defendant engaged in "a pattern or practice" of intentional race discrimination in hiring and internal employment matters in violation of § 1981. Reacting to *Patterson,* the defendant has filed a motion to dismiss most of the plaintiffs' claims. In addition to opposing this motion to dismiss, the plaintiffs have filed a motion for leave to amend their complaint. Compelled by *Patterson* and its progeny, the Court will grant in part and deny in part the defendant's motion to dismiss and will grant in part and deny in part the plaintiffs' motion for leave to amend.

## I. Background

In bringing this lawsuit against the defendant for its alleged employment discrimination, the plaintiffs elected not to pursue potentially viable remedies under Title VII, 42 U.S.C. § 2000e, *et seq.* and decided instead to rely exclusively on the Civil Rights Act of 1866, 42 U.S.C. § 1981. After the plaintiffs filed their complaint, the defendant answered, and the parties filed various pre-trial motions and engaged in extensive discovery on class-related issues. Upon the parties' request, the Court stayed these proceedings when it became clear that the Supreme Court's impending deci-

---

1. The Court has not yet ruled on the plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The plaintiffs seek to represent a class (estimated to comprise over 75 individuals) of black persons who have been or are presently employed by the defendant.

sion in *Patterson* could materially affect the balance of these proceedings.

The plaintiffs bring various charges that, liberally construed in their favor, can be loosely grouped into four kinds of discrimination claims: (1) on-the-job working condition disparities in compensation, benefits, evaluations, assignments, and/or training (plaintiffs Gloria Ford, Charlotte Scott, and Alvin Walker); (2) discharges and/or "reductions-in-force" (plaintiffs Joan Brereton, Betty Harris Poteat, Etta Waldron, Scott, and Walker); (3) promotion denials (plaintiffs Ford and Waldron); and (4) a refusal to hire (plaintiff Sylvia Wood). The plaintiffs also assert these claims on behalf of the class.

## II. Analysis

■ A threshold issue is whether the Court should even re-evaluate this case in light of *Patterson* because to do so would be a retroactive application of a Supreme Court case decided after the plaintiffs filed a complaint in reliance upon pre-*Patterson* § 1981 jurisprudence. However, no matter how unfair the result may seem to the plaintiffs, the Court is constrained by *Patterson*'s binding authority. This Court cannot ignore that the Supreme Court has retroactively applied the *Patterson* holding, both in *Patterson* itself and in other cases before the Court. *See Pullman–Standard, Inc. v. Swint,* — U.S. —, 110 S.Ct. 316, 107 L.Ed.2d 307 (1990) (granting certiorari, vacating appellate court's judgment, and remanding in light of *Patterson*); *Bhandari v. First Nat'l Bank of Commerce,* — U.S. —, 109 S.Ct. 3207, 106 L.Ed.2d 558 (1989) (same). Moreover, there is overwhelming authority from the lower federal courts that *Patterson* should

be applied retroactively.[2] Considering this great weight of authority, the Court sees no reason not to apply *Patterson* to this case, especially since retroactivity concerns are less significant in the instant case, which is still in its relatively early stages, than in many other cases that already had progressed through a final decision and were pending on appeal only to be affected by a retroactive application of *Patterson*.

Another preliminary matter is that the defendant's motion seeks the dismissal of most, but not all, of the plaintiffs' claims. The defendant does not contend that the plaintiff Woods' claim based upon its allegedly discriminatory refusal to hire her must be dismissed, apparently recognizing correctly that "a refusal to enter into an employment contract on the basis of race" is a claim that "would be actionable under ... § 1981 as an impairment of 'the same right ... to make ... contracts ... as ... white citizens.'" *Patterson,* — U.S. —, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989). Therefore, the Court will put to one side the Wood refusal-to-hire claim and will address herein the other claims constituting the bulk of the plaintiffs' complaint.

### A. "Hostile Work Environment" Claims

■ While the plaintiffs do not allege acts of blatant, crude racial harassment (for example, name-calling and pejorative stereotyping), the plaintiffs do accuse the defendant of engaging in a more subtle form of race discrimination. They contend that the defendant violated § 1981 by creating what was in effect a hostile work environment in which black employees received less favorable compensation and benefits packages, evaluations, and train-

**2.** The United States Court of Appeals for this Circuit vacated a district court's order and remanded for reconsideration in light of *Patterson, see Tatum v. Hyatt Hotels,* No. 89–7032, 1989 WL 127984 (D.C.Cir. Oct. 6, 1989) (per curiam), and *Patterson* has been applied to pending cases in this district as well, *see Green v. Kinney Shoe Corp.,* 728 F.Supp. 768 (D.D.C. 1989); *Byrd v. Pyle,* 728 F.Supp. 1 (D.D.C.1989); *Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989). In addition, appeals courts in most of the other circuits have applied

*Patterson* retroactively. *See, e.g., Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir.1989); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13 (1st Cir.1989); *Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989); *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475 (6th Cir.1989); *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908 (4th Cir.1989); *Lynch v. Belden & Co.,* 882 F.2d 262 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1134, 107 L.Ed.2d 1040 (1990); *Matthews v. Freedman,* 882 F.2d 83 (3d Cir.1989).

ing and work assignments than their white colleagues.

However, it is well-established after *Patterson* that § 1981 is not the proper remedy for claims based upon racially discriminatory working conditions imposed after formation of the employment contract. The Supreme Court went to great pains to emphasize the limited scope of § 1981:

> The most obvious feature of [§ 1981] is the restriction of its scope to forbidding discrimination in the 'mak[ing] and enforce[ment]' of contracts alone. Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief. Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts.

*Patterson*, 109 S.Ct. at 2372. The *Patterson* Court went on to note that "the right to make contracts does not extend ... to conduct by the employer *after the contract* relation has been established, including breach of the terms of the contract or *imposition of discriminatory working conditions*" and that "[s]uch postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, *matters more naturally governed by state contract law and Title VII.*" *Id.* at 2373 (emphasis added). Consequently, lower federal courts have applied *Patterson* to hold that allegations of discrimination based upon an employer's racial harassment or an employer's creating or tolerating a hostile work environment are insufficient to state a claim under § 1981. *See, e.g., Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 479 (6th Cir.1989); *Lynch v. Belden & Co.*, 882 F.2d 262, 266–67 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1134, 107 L.Ed.2d 1040 (1990); *Matthews v. Freedman*, 882 F.2d 83, 85 (3d Cir.1989); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 424 (7th Cir.1989).

In light of the authority discussed above, the Court must dismiss the plaintiffs' claims based on their discriminatory work environment allegations. "This type of conduct, reprehensible though it be if true, is not actionable under § 1981," *Patterson*, 109 S.Ct. at 2374, because it allegedly occurred after the formation of an employment contract, *see id.* at 2372 (§ 1981's protection "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment").

**B. Discriminatory Termination Claims**

■ *Patterson* also requires this Court to dismiss the plaintiffs' discriminatory termination claims. Once again, the plaintiffs complain about postformation conduct by the defendant which, while actionable under Title VII, is *no longer prohibited by* § 1981. *Id.* at 2373; *see also Lavender v. V & B Transmissions & Auto Repair*, (to be reported at) 897 F.2d 805, 807 (5th Cir. 1989); *Overby v. Chevron USA, Inc.*, 884 F.2d 470, 473 (9th Cir.1989); *Alexander v. New York Medical College*, 721 F.Supp. 587, 588 (S.D.N.Y.1989).

Nor do the proposed amended termination claims fare any better in this brave new post-*Patterson* world. Taking their cue from Justice Stevens, the plaintiffs seek to circumvent *Patterson*'s crucial distinction between pre- and postformation conduct by transforming their "termination" claims into "failure to renew at-will contract" claims. *See Patterson*, 109 S.Ct. at 2396 (Stevens, J., dissenting in part). As this argument goes, an at-will employee (like the plaintiffs here and the plaintiff in *Patterson*) is not only performing under an existing contract but also is constantly "remaking" a new contract so that whenever the employee is discriminatorily terminated, the employer has impaired his or her right to "make" a contract in violation of § 1981. *See id.*

However, the great creativity of this argument is inversely proportional to the acceptance that it has garnered. When the Supreme Court considered this theory in *Patterson*, the other eight justices explicit-

ly rejected it, leaving Justice Stevens as its sole champion. Moreover, district courts have also rejected the same type of argument. *See Gersman v. Group Health Ass'n,* 725 F.Supp. 573, 575 (D.D.C.1989); *Rick Nolan's Auto Body Shop v. Allstate Ins. Co.,* 718 F.Supp. 721, 722 (N.D.Ill. 1989); *Carter v. O'Hare Hotel Investors,* No. 88-C-10713, 1989 WL 153338, at 2 (N.D.Ill. Nov. 6, 1989). Thus, heeding the Supreme Court's admonition to "not strain in an undue manner the language of § 1981," *Patterson,* 109 S.Ct. at 2377, this Court will not adopt the plaintiffs' "continuous contract renewal" theory.

Although the Court recognizes that "leave [to amend pleadings] shall be freely given when justice so requires," Fed.R. Civ.P. 15(a), justice and common sense do not require courts to permit the filing of an amended complaint when the proposed amendment fails to cure the defect. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ("futility of amendment" is one reason for courts to deny leave to amend). "Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given." *Pan-Islamic Trade Corp. v. Exxon,* 632 F.2d 539, 546 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Because the plaintiffs' proposed amendments to their discriminatory termination claims would not prevent dismissal of those claims under *Patterson,* the amendments would be futile and therefore will not be permitted.

### C. Promotion–Denial Claims

■ Unlike in the hostile work environment and discriminatory termination contexts, *Patterson* did not establish a comparable bright line rule that an employer's alleged discriminatory failure to promote an employee never violates § 1981. Instead, the *Patterson* Court held that § 1981 does cover certain discriminatory promotion decisions:

> [T]he question whether a promotion claim is actionable under § 1981 depends on whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981.... *Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.*

*Patterson,* 109 S.Ct. at 2377 (emphasis added).

Thus, whether a given discriminatory promotion decision violates § 1981 is a determination that can only be made on a case-by-case basis after a comparison of the employee's position and the position to which he or she allegedly would have been promoted absent discrimination. This determination is relatively straightforward at the two extremes of the continuum. *Compare id.* (citing change from associate to partner in law firm contemplated in *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), as example of "new and distinct relation"); *Williams v. Chase Manhattan Bank,* 728 F.Supp. 1004, 1009 (S.D.N.Y.1990) (change from employee to officer of bank would constitute new and distinct relation) *with White v. Federal Express Corp.,* 729 F.Supp. 1536, 1546 (E.D.Va.1990) (change from courier to dispatcher was not opportunity for new and distinct relation because both jobs were hourly, non-supervisory positions with little difference in pay and essentially same levels of responsibility); *Patterson v. McLean Credit Union,* 729 F.Supp. 35, 36 (M.D.N.C.1990) (opinion on remand) (change from file coordinator/back-up teller to "Accounting Clerk Intermediate" was not opportunity for new and distinct relation because both jobs were "compensated on an hourly wage basis [with 89 cents per hour difference in pay] at the same location, in the same office, and under the same working conditions"). However, towards the middle of this continuum there exists a "gray area" in which courts must make increasingly fine distinctions based upon highly fact-specific comparisons of job descriptions and responsibilities. *See, e.g., Miller v. SwissRe Holding, Inc.,* (to be reported at) 731 F.Supp. 129, —— (S.D.N.

Y.1990); *Hudgens v. Harper–Grace Hosps.*, 728 F.Supp. 1321, 1324–26 (E.D. Mich.1990); *Byrd v. Pyle*, 728 F.Supp. 1, 2–3 (D.D.C.1989); *Luna v. City and County of Denver*, 718 F.Supp. 854, 856–57 (D.Colo.1989).

It is precisely because this issue requires such careful, fact-specific analysis and because the record does not contain sufficient information about the positions involved, that the Court—with one exception—will deny the defendant's motion to dismiss the promotion-denial claims.[3] Similarly, the Court will also allow the plaintiffs' proposed amendments, which rely upon *Patterson*'s "new and distinct relation" test to modify the promotion-denial claims brought by the Ford plaintiff and on behalf of the class. That the record presently before the Court displays a dearth of factual information about the various positions implicated by the plaintiffs' promotion-denial claims is, after all, hardly surprising considering that this is a motion to dismiss, whose function "is merely to assess the legal feasibility of the complaint, *not to assay the weight of the evidence which might be offered in support thereof*." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (emphasis added); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) ("[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

It would therefore be premature for the Court, at this stage of the case, to decide that the plaintiffs have not offered enough evidence on their promotion-denial claims to satisfy *Patterson*'s "new and distinct employer-employee relation" test. The Court recognizes that at some later time it may have to ascertain whether the plaintiffs' evidence satisfies this test. If and when that time comes, the Court will examine all the factors relevant to the positions at issue, including qualifications for the promotion, types of daily duties, amount of responsibility, method of calculating wages/salary, differences in pay and other benefits, and change in status within the company. *See Hudgens v. Harper–Grace Hosps.* 728 F.Supp. 1321, 1325 (E.D. Mich.1990); *Williams v. Chase Manhattan Bank*, 728 F.Supp. 1004, 1008 (S.D.N.Y. 1990). For now, however, the allegations in the plaintiffs' amended complaint that charge the defendant with discriminatory failures to promote employees from "nonexempt" to "exempt" positions are sufficient to overcome the Rule 12(b)(6) hurdle. *See Miller v. SwissRe Holding, Inc.*, (to be reported at) 731 F.Supp. 129, 130 (S.D.N.Y. 1990) ("Because we conclude that ... SwissRe considers the Supervisor position a management position with different

---

**3.** The original complaint also includes a claim by the plaintiff Waldron that the defendant discriminated against her by failing to promote her from the position of Senior Accountant to various unspecified "higher exempt-level positions." After *Patterson*, this "bare bones" statement simply is insufficient to state a § 1981 claim as required by Fed.R.Civ.P. 12(b)(6) and must therefore be dismissed.

In any event, the plaintiffs' proposed amended complaint in no way supplements, changes, or remedies the Waldron promotion-denial claim whereas it specifically states in *Patterson*-like language that the plaintiff Ford's "attempt to advance from her job as Supervisor, Documents Security to a Manager's position involved an opportunity for a new and distinct relationship with [the defendant]." The Court recognizes that subtle distinctions in a complaint are much less important in this modern era of notice pleading than in the days of highly-stylized code pleading. However, the differ-

ent treatment accorded these two promotion-denial claims in the proposed amended complaint suggests that the plaintiffs have abandoned the Waldron claim in light of *Patterson.* Moreover, the plaintiffs' opposition to the defendant's motion for partial dismissal specifically defends the post-*Patterson* viability of promotion-denial claims brought on behalf of Ford and the class yet remains conspicuously silent regarding the Waldron claim. Finally, that the plaintiffs twice failed to rebut the defendant's prominent contentions that no named plaintiff other than Ford has been identified as possessing a viable promotion-denial under the *Patterson* test, Defendant's Opposition to Plaintiffs' Motion to Amend Complaint at 6; Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Partial Dismissal at 11, further supports the conclusion that the plaintiffs recognize that the Waldron claim should be dismissed. Thus, for the foregoing reasons, the Court will dismiss the plaintiff Waldron's promotion-denial claim.

duties, and because the relationship of the employer with *exempt employees* differs significantly from the employer's relationship with *non-exempt employees*, with regard to, inter alia, methods of payment of salary and performance evaluation, we believe that plaintiff, for the purposes of this [summary judgment] motion, has satisfied the standard of a 'new and distinct relationship.' " (emphasis added)).

### D. District of Columbia Human Rights Act Claims

 The proposed amended complaint seeks to add a count, on behalf of five individual plaintiffs as well as the class, for alleged violations of the District of Columbia Human Rights Act (DCHRA), D.C.Code Ann. § 1–2501. However, the Court will deny leave to file these amendments because the DCHRA claims are beyond the proper bounds of this Court's subject-matter jurisdiction and/or are barred by the applicable statute of limitations.

With one exception, it would not be proper for the Court to exercise subject-matter jurisdiction over the individual plaintiffs' proposed DCHRA claims. The only way that the Court could have subject-matter jurisdiction over these "state-law" claims is under some sort of "pendent" jurisdiction theory. Except for the plaintiff Ford's proposed DCHRA claim,[4] however, the other four individual plaintiffs' claims do not fall within the established framework for the exercise of any type of "pendent" jurisdiction. Because the § 1981 claims of these four plaintiffs (Brereton, Scott, Waldron, and Walker) do not survive this Opinion in the aftermath of *Patterson* and its progeny, their proposed DCHRA claims do not qualify for "pendent claim" jurisdiction, which enables federal courts to decide a plaintiff's state-law claim if it is derived from a common nucleus of operative fact as—and is pendent to—the *same plaintiff's* federal claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966);

*District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 10 (D.C. Cir.1988); *see also Huffman v. Hains*, 865 F.2d 920, 922 (7th Cir.1989). There is no authority to the effect that pendent claim jurisdiction permits one plaintiff's state-law claim to ride into federal court on the jurisdictional coat-tails of *another* plaintiff's federal claim, no matter how closely the federal and state-law claims are related.

Moreover, the four individual plaintiffs' proposed DCHRA claims do not fit the typical mold of "pendent party" jurisdiction, "that is, jurisdiction over parties not named in any claim independently cognizable by the federal court." *Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). Most of the time, courts considering the assertion of pendent party jurisdiction must decide whether "a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, [should be allowed] to join an *entirely different defendant* on the basis of a state-law claim over which there is no independent basis of federal jurisdiction." *Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (emphasis added); *see also Finley*, 109 S.Ct. at 2005. This type of pendent party jurisdiction is inapposite in the instant case because the pendent parties in the proposed DCHRA claims are not defendants but are plaintiffs asserting new state-law claims against the same defendant.

Thus, the only other theory under which this Court could arguably exercise subject-matter jurisdiction over the four individual plaintiffs' proposed DCHRA claims would be "pendent party plaintiff" jurisdiction. It should be noted, however, that this theory of federal court jurisdiction—which would greatly expand Congress' statutory grant of limited jurisdiction to the federal judiciary—has gained little acceptance. With regard to diversity jurisdiction under 28 U.S.C. § 1332, for example, the Supreme

---

**4.** While the Court could properly exercise "pendent claim" jurisdiction over the plaintiff Ford's DCHRA claim because her § 1981 promotion-denial claim survives this Opinion, *see United*

*Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40 (1966), her DCHRA claim, as discussed below, is time-barred in any event.

Court has held that each plaintiff must satisfy the jurisdictional "amount in controversy" requirement separately and that any plaintiff who fails to do so must be dismissed. *Zahn v. International Paper Co.,* 414 U.S. 291, 300–01, 94 S.Ct. 505, 511–12, 38 L.Ed.2d 511 (1973); *see also Finley,* 109 S.Ct. at 2010 ("All our cases—*Zahn, Aldinger,* and [*Owen Equipment Erection Co. v.*] *Kroger* [, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ]—have held that a grant of jurisdiction over claims involving particular parties does not confer jurisdiction over *additional claims by* or against *different parties.*" (emphasis added)); *Aldinger,* 427 U.S. at 15, 96 S.Ct. at 2421 ("[T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress."). Furthermore, the lower federal courts have, for the most part, refused to exercise pendent party plaintiff jurisdiction. *See, e.g., Fritts v. Niehouse,* 604 F.Supp. 823, 829–30 (W.D. Mo.1984) ("Accordingly, the Court holds that it lacks pendent plaintiff jurisdiction over Joyce Fritts's claim for loss of consortium. This holding is in accord with the decisions of virtually all federal courts that have considered this issue recently." (citing cases)), *aff'd,* 774 F.2d 1170 (8th Cir.1985); *Marcano v. Northwestern Chrysler–Plymouth Sales, Inc.,* 550 F.Supp. 595, 605 (N.D.Ill.1982) (although Provencio joins the other plaintiff in two state-law claims, "Provencio has no federal claim ... [and therefore] cannot invoke the doctrine of pendent jurisdiction to adjudicate her state claims in this forum"). In light of the foregoing discussion, the Court, in the exercise of its discretion, will not overextend Congress' grant of limited jurisdiction under 28 U.S.C. § 1331 by resting an assertion of jurisdiction over the proposed "state-law" DCHRA claims upon the too-thin reed of pendent party plaintiff jurisdiction.

Moreover, this case is a particularly inappropriate candidate for pendent party plaintiff jurisdiction because the proposed DCHRA claims of the four individual plaintiffs are not sufficiently related to the remaining federal claims. The two surviving § 1981 claims (the Ford promotion-denial claim and the Wood refusal-to-hire claim) have little in common with the proposed DCHRA claims (the Waldron promotion-denial and constructive discharge claims and the Brereton, Scott, and Walker discharge claims). It is simply not enough that the federal and the state-law claims both name the same defendant and allege a pattern of discriminatory conduct or that the plaintiffs seek to assert the federal claims on behalf of a class of similarly-situated persons. On those rare occasions when a court has exercised pendent party plaintiff jurisdiction, the state-law claims have been much more closely related to the federal claims. *See Rodriguez v. Comas,* 888 F.2d 899, 903–06 (1st Cir.1989) (district court did not abuse its discretion in exercising pendent party plaintiff jurisdiction when state-law emotional distress claims of wife shared common nucleus of operative fact with husband's 42 U.S.C. § 1983 claim); *Weinberger v. Kendrick,* 698 F.2d 61, 76–77 (2d Cir.1982) (approving assertion of pendent plaintiff party jurisdiction when state common law fraud claims shared common nucleus of operative fact with federal rule 10b–5 claims and federal court was only forum that could render complete disposition of federal and related state-law claims), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Because the DCHRA claims do not share a common nucleus of operative fact with either of the remaining federal claims, the Court sees no reason to take the unusual step of exercising pendent party plaintiff jurisdiction in this case.

Furthermore, the applicable statute of limitations is fatal to the one DCHRA claim (the Ford promotion-denial claim) over which the Court could properly exercise pendent claim jurisdiction and also provides an alternative ground for the Court's rejection of the DCHRA claims over which it has already declined to exercise subject-matter jurisdiction. It is well-established that the statute of limitations for DCHRA claims is one year. D.C.Code Ann.

§ 1–2544, *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1419 (D.C.Cir. 1986). The original complaint in this case was filed November 7, 1986. Consequently, assuming *arguendo* that the DCHRA claims in the proposed amended complaint would "relate back" to the date of the original complaint, *see* Fed.R.Civ.P. 15(c), any such claim based on allegedly discriminatory conduct that occurred before November 7, 1985 would be time-barred.

The plaintiff Ford alleges that the defendant failed to promote her from Supervisor, Documents Security to Manager in violation of the DCHRA. Proposed Amended Complaint at ¶¶ 20c, 26. However, in her deposition she indicates that the manager's position she was seeking was filled in January 1984. Defendant's Opposition to Plaintiffs' Motion to Amend Complaint, Ford Dep. at 175–78. Thus, the DCHRA claim based upon that alleged promotion denial would be filed at least nine months after the expiration of the statute of limitations.

Even if the Court could properly assert subject-matter jurisdiction over the plaintiff Waldron's DCHRA claims, they also would be untimely in any event. She alleges that the defendant violated the DCHRA by failing to promote her and then by constructively discharging her. Proposed Amended Complaint at ¶ 26. However, the plaintiff Waldron's signed letter of resignation, giving the defendant two-weeks notice, was dated and tendered November 1, 1985. *See* Defendant's Opposition to Plaintiffs' Motion to Amend Complaint, Waldron Dep. at 242–45 & Attachment A. While the letter indicates that the plaintiff Waldron's resignation did not "go into effect" until November 15, 1985, the fact that she signed and tendered the letter on November 1, 1985 proves that the defendant's alleged acts of discrimination which caused her resignation must have occurred on or before November 1, 1985, or almost one week before the cut-off date for the one year statute of limitations period covering her proposed DCHRA claims.

Similarly, even assuming *arguendo* that the Court could exercise jurisdiction over the plaintiff Walker's proposed DCHRA claim, it also would be untimely. He alleges that he was the victim of discrimination in violation of the DCHRA when the defendant discharged him in February 1984 to achieve a "reduction-in-force." Proposed Amended Complaint at ¶¶ 9, 26. However, on its face this DCHRA claim occurred over two-and-one-half years before the original complaint was filed and therefore clearly would be barred by the statute of limitations.

Finally, especially considering the sweeping failure of the individual plaintiffs' proposed DCHRA claims, the plaintiffs have not demonstrated that the proposed DCHRA claim on behalf of the class would fare any better in surviving the jurisdiction and statute of limitations rulings announced by the Court herein. Therefore, the plaintiffs shall not be permitted, at this time, to amend their complaint by adding a DCHRA claim on behalf of the class.

### III. Conclusion

The Supreme Court's decision in *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), requires this Court to dismiss most of the plaintiffs' complaint as attacking postformation conduct and therefore failing to state a § 1981 claim. The Court dismisses all of the "hostile work environment" and discriminatory termination claims (both on behalf of the individual plaintiffs and the class) and the plaintiff Waldron's promotion-denial claim. Consequently, this case now consists of: (1) the plaintiff Wood's refusal-to-hire claim, which was not subject to the defendant's motion for partial dismissal, as well as any other refusal-to-hire claims brought on behalf of the not-yet-certified class and (2) the promotion-denial claims brought by the plaintiff Ford individually and on behalf of the class. Along similar lines, the Court must also deny—for the most part—the plaintiffs' motion for leave to amend their complaint. Only those amendments (Proposed Amended Complaint ¶¶ 13, 20c) going to the promotion-denial claims of the plaintiff Ford in her individual capacity and on behalf of the class shall be permitted.

An Order in accordance with the foregoing Opinion will be issued of even date herewith.