[599 NYS2d 841]

GIAIMO & VREEBURG et al., Appellants, v JAMES T. SMITH, Respondent.

Second Department, July 6, 1993

### APPEARANCES OF COUNSEL

*Giaimo & Vreeburg,* Kew Gardens *(Joseph Giaimo* of counsel), appellant *pro se* and for others, appellants.

*Goodkind, Labaton & Rudoff,* New York City *(Brian D. Caplan* of counsel), for respondent.

### OPINION OF THE COURT

THOMPSON, J. P.

The plaintiff attorneys commenced the instant action alleging that the defendant, their former client, improperly discharged them based solely upon their race. The defendant, who is known professionally as "LL Cool J", is black; the plaintiff attorneys, Giaimo & Vreeburg, are white.

The amended verified complaint contains several causes of action, but those relevant to the instant appeal are the fourth, fifth, and sixth causes of action. The factual allegations pertinent to the foregoing causes of action assert, *inter alia,* that after a number of years, during which the plaintiffs represented the defendant and forged a close relationship with him, the defendant dismissed the plaintiffs as his attorneys in August 1989 because of his alleged "desire to employ as attorneys, accountants, business managers and other professionals, only members of the [black race]". According to the plaintiffs' complaint, the defendant's discriminatory conduct violated, *inter alia,* the Federal Civil Rights Act (42 USC § 1981), Executive Law § 296 (1) (a), and Civil Rights Law § 40-c (2).

The defendant subsequently moved to dismiss the fourth, fifth, and sixth causes of action pursuant to CPLR 3211 (a) (7) on the ground that they failed to state a cause of action. The Supreme Court granted the motion, finding, *inter alia,* that 42 USC § 1981 covered only the making and enforcement of contracts, and that the allegations of wrongful termination made by the plaintiffs were outside its scope. The court dismissed the fifth cause of action, alleging a violation of

Executive Law § 296, based upon its conclusion that Civil Rights Law § 40-c prohibited discriminatory discharges only within an employer-employee relationship, which did not apply to an attorney-client relationship. Lastly, the court ruled that the sixth cause of action alleging a violation of Civil Rights Law § 40-c was defectively pleaded, inasmuch as the complaint failed to allege that notice of the action was served upon the Attorney-General as required by Civil Rights Law § 40-d.

■ We agree with the Supreme Court's conclusion that the allegations set forth in the complaint fail to state a cognizable claim under 42 USC § 1981. The United States Supreme Court has clearly held that the protections of section 1981 extend only to the making and enforcement of contracts and that "[w]here an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief" (Patterson v McLean Credit Union, 491 US 164, 176). Further, the weight of authority is that under the Patterson rule, termination of a contract is not covered by section 1981 (see, Lavender v V & B Transmissions & Auto Repair, 897 F2d 805; Overby v Chevron USA, 884 F2d 470, 473; Long v AT & T Information Sys., 733 F Supp 188; Doffoney v Board of Trustees, 731 F Supp 781; Coleman v Domino's Pizza, 728 F Supp 1528, 1531-1532, n 3; Alexander v New York Med. Coll., 721 F Supp 587; Rivera v AT & T Information Sys., 719 F Supp 962; Hall v County of Cook, 719 F Supp 721; Nolan's Auto Body Shop v Allstate Ins. Co., 718 F Supp 721). Accordingly, and since the allegations of improper discrimination made here concern "postformation" conduct relating to the termination of the parties' professional relationship, the plaintiffs' claims fall outside the reach of the statute.*

---

* In 1991, Congress amended the Civil Rights Act of 1964 by extending its protections to the termination of a contract (see, Pub L 102-166, tit I, § 101, adding 42 USC § 1981 [b]). By its terms, however, the amended provision became effective on November 21, 1991, some two years after the alleged termination occurred in the instant case (42 USC § 1981 [b]). We note that the plaintiffs do not argue that they are entitled to retroactive application of section 1981 (b) (cf., Tong v National Broadcasting Co., 182 AD2d 354), and in any event, most Federal Circuit Courts have held that the amendment is not to be retroactively applied (see, Vance v Southern Bell Tel. & Tel. Co., 983 F2d 1573; Hicks v Brown Group, 982 F2d 295, 297-298; Luddington v Indiana Bell Tel. Co., 966 F2d 225; Rowe v Sullivan, 967 F2d 186; Holt v Michigan Dept. of Corrections, 974 F2d 771; Fray v Omaha World Herald Co., 960 F2d 1370; Vogel v City of Cincinnati, 959 F2d 594, 598, cert denied — US —, 113 S Ct 86).

Moreover, we are unpersuaded by the plaintiffs' assertion that their complaint can be reasonably construed to allege covered "preformation" discrimination. The plaintiffs claim that each request for legal services made by the defendant constituted a separate and "new" contract, and that the defendant's refusal to enter into a "new" contract for legal services actually constitutes "preformation" conduct to which the protections of section 1981 would attach. While the plaintiffs' pleading must be construed liberally *(see, Rovello v Orofino Realty Co.,* 40 NY2d 633), as the dissenter properly observes, "and be deemed to allege whatever can reasonably be implied from its statements, it must still allege the material elements of the cause of action" *(Kohler v Ford Motor Credit Co.,* 93 AD2d 205, 207; *cf., Lewis v Village of Deposit,* 40 AD2d 730, *affd* 33 NY2d 532; *Didier v Macfadden Publs.,* 299 NY 49, 53).

Although the plaintiffs now suggest that their representation of the defendant was comprised of separately arising contracts corresponding to each request for legal services, the amended complaint characterizes the parties' relationship in precisely the opposite fashion, since it emphasizes, among other things, that "beginning in or about July 1985, *and until the time"* (emphasis added) they were dismissed, the plaintiffs were employed by the defendant to act as his attorneys, that the plaintiffs' firm was "continually" available to the defendant, 24 hours a day, and that it afforded him "unparalleled time and attention", accepting "calls during the middle of the night and in the early morning hours". If anything then, the reasonable inference to be drawn from the plaintiffs' own complaint is that the parties' relationship was ongoing and continuous rather than comprised of successively arising contracts. In any event, even if the complaint is interpreted as alleging that successive contracts for legal services arose and that the discrimination occurred upon the defendant's refusal to renew the parties' contractual relationship, dismissal would still be warranted.

Significantly, in construing analogous cases, Federal courts have rejected attempts to circumvent the *Patterson* rule by the plaintiffs who have merely recast "postformation" claims as purported "preformation" discrimination, i.e., claims that an individual "is not only performing under an existing contract but also is constantly 'remaking' a new contract so that whenever the employee is discriminatorily terminated, the employer has impaired his or her right to 'make' a

contract in violation of § 1981" *(Brereton v Communications Satellite Corp.,* 735 F Supp 1085, 1088). As the court in *Brereton* commented, "the great creativity of this argument is inversely proportional to the acceptance that it has garnered" *(Brereton v Communications Satellite Corp., supra,* at 1088; *see also, Smith v Continental Ins. Corp.,* 747 F Supp 275, 281-282, *affd* 941 F2d 1203; *Carter v O'Hare Hotel Investors,* 736 F Supp 158, 160; *Coleman v Domino's Pizza,* 728 F Supp 1528, 1531-1532, *supra).* It has been observed that if such a theory were accepted, discrimination plaintiffs could routinely "turn postformation conduct into preformation conduct simply by alleging that they sought a 'new' contract reinstating the terms of a prior agreement" *(Nolan's Auto Body Shop v Allstate Ins. Co.,* 718 F Supp 721, 722, *supra).*

Here, it is apparent that "although plaintiffs have attempted to present their § 1981 claim as charging discrimination in the making of a 'new' contract, plaintiffs' claim essentially is based on the discrimination which allegedly occurred in the termination of their prior agreement" *(Nolan's Auto Body Shop v Allstate Ins. Co., supra,* at 722). In short, irrespective of whether the plaintiffs' representation was comprised of just one contract or of successively arising contracts, the fact remains that the wrongful discrimination which allegedly occurred was simply the termination of the parties' professional relationship in August 1989. Under these circumstances, the Supreme Court properly concluded that the complaint failed to state a cause of action under the Federal Civil Rights Act.

■ Additionally, we find that the fifth cause of action, alleging discriminatory conduct in violation of Executive Law § 296, was properly dismissed. Executive Law § 296 (1) (a) prohibits, *inter alia,* discrimination in employment on racial grounds. However, the plain language of the statute limits its applicability to employees *(see, Mehtani v New York Life Ins. Co.,* 145 AD2d 90, 93; *cf., State Div. of Human Rights v GTE Corp.,* 109 AD2d 1082, 1083). Here, since the relationship between the plaintiffs and the defendant was clearly that of attorney and client, and not employer and employee, Executive Law § 296 is inapplicable.

■ Lastly, the Supreme Court properly dismissed the sixth cause of action asserted under Civil Rights Law § 40-c inasmuch as the plaintiffs failed to allege compliance with the statutory requirement of notice to the Attorney-General, as

specifically mandated by Civil Rights Law § 40-d *(see, Silver v Equitable Life Assur. Socy.,* 168 AD2d 367, 368).

RITTER, J. (concurring in part and dissenting in part). I agree that the fifth cause of action, alleging a violation of New York's Human Rights Law, and the sixth cause of action, alleging a violation of New York's Civil Rights Law, were properly dismissed for the reasons stated in the majority's opinion. However, I believe dismissal of the fourth cause of action was premature because the allegations of the complaint, coupled with the plaintiffs' affidavit submitted in opposition to the defense motion, state a viable claim under the Federal Civil Rights Act of 1866 (42 USC § 1981). I reach this conclusion mindful of the procedural posture of the case, a motion for dismissal made pursuant to CPLR 3211 (a) (7), in which the allegations of the affidavits must be read together with the complaint and construed so as to give the plaintiffs the benefit of every possible favorable inference *(see, Rovello v Orofino Realty Co.,* 40 NY2d 633, 634).

In my view, the leading case on the subject at bar, *Patterson v McLean Credit Union* (491 US 164) is being applied too restrictively by the majority in this case. In *Patterson,* the plaintiff had been employed as a teller at the defendant credit union from 1972 until she was discharged in July 1982. Soon thereafter, she commenced suit seeking damages under 42 USC § 1981 and title VII of the Civil Rights Act of 1964. Her main complaint was that she had been the victim of racial harassment by being passed over for promotion, not being trained for higher level jobs, denied wage increases, and finally discharged, all because of her race.

Writing for a majority of the Court, Justice Kennedy explained that section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts. He distinguished the refusal to enter into a contract with someone (or an offer to make a contract but only on discriminatory terms) from conduct engaged in by an employer after the contractual relationship has been established, referring specifically to a breach of the terms of the contract or the imposition of discriminatory working conditions: "Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more

naturally governed by state contract law and Title VII" *(Patterson v McLean Credit Union, supra, at 177).*

Based on this analysis, the Court held that the conduct labeled by the plaintiff as racial harassment constituted post-formation conduct by her employer relating to the terms and conditions of continuing employment, and therefore, fell outside the scope of protection afforded by section 1981. Notably, however, the Court applied a different analysis to the claim that the plaintiff had been denied a promotion on the basis of race. The Court held that such a claim is actionable under section 1981, where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer *(Patterson v McLean Credit Union, supra,* at 185).

In the case at bar, the plaintiffs allege in their complaint that the defendant employed them beginning in July 1985 to act as his attorneys, and to represent him in all of his legal affairs, and as such, the plaintiffs rendered legal services at rates agreed upon from time to time. At paragraphs 31 and 32, the plaintiffs detail the different transactions in which they rendered legal services—negotiating record and management agreements, real estate matters, and copyright litigation —and in paragraph 33, they allege that they were hired "for their legal services at an hourly rate and/or as otherwise agreed to from time to time". It is alleged that the plaintiffs' firm was the exclusive provider of legal services in every aspect of the defendant's personal and professional life between June 1985 and late 1988.

It is further alleged that beginning in the spring of 1989, the defendant's father, who had taken control of the defendant's business affairs, began a campaign to dismiss the defendant's entire staff of " 'white' employees", and to hire only "black" advisers. According to the plaintiffs, this decision was made despite the fact that both the defendant and his father were completely satisfied with the services provided by the law firm. Indeed, the plaintiffs allege that the defendant's father informed the plaintiff Joseph O. Giaimo at the time of the termination of their relationship: "Giaimo, you're a great lawyer; one of the best I ever met, but we are going to make a change and you know that".

The plaintiffs' theory of recovery includes the claim that the "defendant refused to enter into a new periodic employment contract each time legal services were to be performed, solely

because of race". As in *Patterson (supra),* the plaintiffs here are alleging that the opportunity to enter into new and distinct contractual relations with the defendant was denied solely on the basis of race. The plaintiffs were not general or house counsel, and allege that they entered into separate, discrete agreements with the defendant each time a business transaction required legal services. *Patterson* holds that such a claim is actionable.

In the cases cited by the majority, the plaintiffs were not really claiming that they had been denied the opportunity to enter into new and different employment opportunities. Many of the cases involved at-will employees who alleged that their employment relationship consisted of a series of contracts renewed on a daily basis, rather than a single continuous relationship of indefinite duration. In order to circumvent the critical distinction between preformation and postformation conduct, those plaintiffs simply recast what were clearly claims of improper terminations of employment into claims of failures to renew at-will contract claims. Such efforts were properly rejected by the Federal courts as disingenuous and legally unsound *(see, Brereton v Communications Satellite Corp.,* 735 F Supp 1085; *Smith v Continental Ins. Corp.,* 747 F Supp 275, *affd* 941 F2d 1203; *Carter v O'Hare Hotel Investors,* 736 F Supp 158; *Coleman v Domino's Pizza,* 728 F Supp 1528). In several other cases, the plaintiffs, before commencing suit, attempted to have the identical employment relationship reinstated with the exact same rights, duties, and obligations as existed under the previous agreement that was terminated *(see, Nolan's Auto Body Shop v Allstate Ins. Co.,* 718 F Supp 721; *Smith v Continental Ins. Corp., supra).*

That the plaintiffs here are alleging an ongoing relationship and that they were continually available to the defendant does not preclude them from asserting that new employment opportunities would arise from time to time. The claims in this case are akin to the opportunity for promotion claims recognized by the *Patterson* Court as actionable under section 1981, even in the context of an ongoing employment relationship *(see also, Brereton v Communications Satellite Corp., supra,* at 1088-1091). The plaintiffs' theory of liability is not premised on the defendant's purported refusal to maintain or reinstate the same employment relationship as existed prior to discharge. Each business transaction in which legal services were provided required a new agreement with distinct rights, duties, and obligations.

Under the circumstances here, dismissal is not an appropriate disposition *(see, Rovello v Orofino Realty Co.,* 40 NY2d 633, 634, *supra).* The sharply contested factual issue raised by the affidavits submitted in opposition to the motion should be resolved by reinstating the fourth cause of action.

Accordingly, I vote to modify the order appealed from, on the law, by deleting the provision thereof which granted that branch of the motion which was to dismiss the fourth cause of action, and by substituting therefor a provision denying that branch of the motion, and as so modified, to affirm the order, without costs or disbursements.

BRACKEN and EIBER, JJ., concur with THOMPSON, J. P.; RITTER and MILLER, JJ., concur in part and dissent in part in a separate opinion by RITTER, J.

Ordered that the order is affirmed, with costs.